# EXHIBIT A

*2011 U.S. Dist. LEXIS 1159, *

AMANDA ANOAI, in her individual capacity and as next friend of her minor child J.A., Plaintiff, v. MILFORD EXEMPTED SCHOOL DISTRICT, et al., Defendants.

NO. 1:10-CV-00044

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

2011 U.S. Dist. LEXIS 1159

January 5, 2011, Decided
January 6, 2011, Filed

**CORE TERMS:** teacher's, factual allegations, school district, immunity, hair, corrective action, proprietary functions, subjected, classroom, plausibly, custom, infer, color of law, negligence claim, governmental function, harassment, omission, gender, federal claims, deprivation, state-law, notice, intentional infliction of emotional distress, entitled to immunity, equal protection claim, equal protection, outrageous, survive, viable, male

**COUNSEL: [*1]** For Amanda Anoai, in her individual capacity and as AS her next friend of her minor child J.A, Plaintiff: Charles Theodore Lester, Jr., LEAD ATTORNEY, Eric C. Deters & Assocs., Independence, KY; Thomas B Bruns, LEAD ATTORNEY, Freund Freeze & Arnold - 1, Cincinnati, OH; Eric C Deters, PRO HAC VICE, Eric C. Deters Attorney at Law, Independence, KY.

For Milford Exempted Village School District, Robert Farrell, Dr. Jill Chin, Defendants: Bernard W Wharton, LEAD ATTORNEY, McCaslin Imbus & McCaslin, Cincinnati, OH; Ralph Gary Winters, LEAD ATTORNEY, McCaslin, Imbus & McCaslin - 1, Cincinnati, OH; Thomas B Bruns, LEAD ATTORNEY, Freund Freeze & Arnold - 1, Cincinnati, OH.

For Tori Bothe, in her individual capacity, Ms. First name unknown, BOYES, in her individual capacity, Defendants: Timothy B Spille, LEAD ATTORNEY, Freund, Freeze & Arnold Co., LPA, Cincinnati, OH; Thomas B Bruns, Freund Freeze & Arnold - 1, Cincinnati, OH.

**JUDGES:** S. Arthur Spiegel, United States Senior District Judge.

**OPINION BY:** S. Arthur Spiegel

**OPINION**

**OPINION & ORDER**

This matter is before the Court on Defendants Chin, Farrell and Milford Exempted School District's Motion to Dismiss (doc. 4), Defendants Bothe and Boys' Motion to Dismiss Plaintiff's Federal **[*2]** Claims (doc. 9), and the respective memoranda in response and reply (docs. 11, 12, 15, 19). For the following reasons, the Court grants in part and denies in part each of Defendants' motions (docs. 4 & 9).

## I. Background

This case arises from an incident at an elementary school where teachers subjected a male student with long hair to ridicule and humiliation. The following facts come from Plaintiff's complaint, and, for the purposes of the instant motions, are taken to be true. Plaintiff's son, J.A., was a sixth-grade student at Boyd E. Smith Elementary School within the bounds of Defendant Milford Exempted School District (doc. 1). Defendant Bothe was the only sixth-grade language arts teacher, and J.A. was a student in her class (Id.). Defendant Boys was a teacher's aide in the classroom (Id.). On or about September 29, 2009, Defendant Bothe asked J.A. to deliver a message to a kindergarten teacher, and, while he was out of the room, Defendant Bothe told her class she was going to pull a prank on J.A. (Id.).

Upon his return to class, J.A. was subjected to Defendant Boys approaching him from behind with a pair of operable mechanical hair clippers, which Boys used to pretend to cut J.A.'s **[*3]** hair off (Id.). Bothe then grabbed J.A.'s hair and put it in three ponytails, one above each ear and one on top (Id.). She then introduced J.A. to her class as a new student with a female name, and the other students laughed (Id.). Boys then walked J.A. over to the other sixth grade classrooms to do the same; J.A. attempted to remove one of the ponytails but Boys told him to leave them in (Id.). Boys then forced J.A. to show the sixth grade his ponytails (Id.). A majority of his classmates subsequently referred to J.A. as "girl," "pigtails," or "ponytails" (Id.). Plaintiff informed Defendants Farrell and Chin, the Superintendent and Principal respectively, of what had transpired, and they took little to no corrective action (Id.). Because Bothe was the only language arts teacher at the school, J.A. could not seek refuge in a different classroom (Id.).

The event caused J.A. and Plaintiff extreme emotional distress, and Plaintiff brought the instant action, alleging violations of 42 U.S.C. § 1983, 20 U.S.C. § 1681 et seq., and the Equal Protection Clause of the United States Constitution, as well as state-law claims of intentional infliction of emotional distress, negligence, assault **[*4]** and battery (Id.). Defendants move the Court to dismiss the complaint, contending that Plaintiff has failed to state a claim upon which relief can be given. The motions are ripe for the Court's consideration.

## II. The Applicable Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A **[*5]** motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly*, Pleading Rules, and the Regulation of Court Access, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct.

at 1949. Plausibility falls somewhere between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to [*6] dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

## III. [*7] Discussion

In Count IV. A, Plaintiff claims that Defendants Bothe and Boys violated 42 U.S.C. § 1983 by depriving her of her "rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of Ohio" (doc. 1). In Count IV. B, Plaintiff claims that they "directly and proximately caused Plaintiffs to be excluded from participation in, be denied the benefits of, or be subjected to discrimination under an educational program receiving federal assistance, on the basis of sex," in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. (Id.). And, in Count IV. C, Plaintiff claims that, "by failing to take decisive and appropriate remedial measures against known perpetrators of the offensive gender-based harassment," Defendants violated J.A.'s equal protection rights (Id.).

In addition to those federal claims, Plaintiff presents the following state-law claims: intentional infliction of emotional distress based on the "intentional acts of Defendants Bothe and Boys and the deliberate omissions of Defendants Milford School District, Farrell, and Chin;" negligence based on breaching the duty to provide a "safe and appropriate [*8] educational environment for J.A.;" assault against Defendant Boys based on her approaching J.A. with mechanical hair clippers and threatening to cut his hair; and battery against Defendant Bothe based on her grabbing J.A.'s hair and putting it in three ponytails (Id.).

### A. Defendants Chin, Farrell and Milford Exempted School District

Defendants contend that Plaintiff has merely recited the elements of the various federal

claims but has not pled facts sufficient to support them and that they are either entitled to immunity from Plaintiff's state-law claims or Plaintiff has failed to allege facts sufficient to support the claims (doc. 4, citing Iqbal, 129 S.Ct. 1937, 173 L. Ed. 2d 868; Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929). Plaintiff contends that the complaint sets forth allegations regarding all of the material elements of the claims to sustain recovery under some viable legal theory (doc. 11, citing Leisure v. Hogan, 21 Fed. Appx. 277, 278 (6th Cir. 2001)).

The Court notes that Defendants rely on Iqbal and Twombly for their motion to dismiss, and Plaintiff does not even mention these cases, let alone attempt to argue how they do not serve to defeat the complaint at issue here. The Court finds this omission stunning and **[*9]** is confounded as to why Plaintiff would exclusively rely on and cite to Leisure v. Hogan, an unpublished Sixth Circuit case from 2001 relying on a Sixth Circuit case from 1988, which itself relied on Conley v. Gibson's "no set of facts" language, which was expressly abrogated by Twombly. See Twombly, 550 U.S. at 562-63. Indeed, Plaintiff completely ignores Iqbal and Twombly, Supreme Court cases decided in 2009 and 2007 respectively. The Court, however, shall not ignore such authority. However, the Court does not find that Iqbal and Twombly serve to defeat Plaintiff's complaint in its entirety and addresses each claim below.

## 1. The 1983 & Equal Protection Claims

As to Plaintiff's Section 1983 claim, Defendants contend that the complaint does not identify what rights, privileges and immunities secured by the Constitution they supposedly violated. In addition, Defendant Milford Exempted particularly notes that the complaint fails to allege any policy or custom that caused the injury, which is required for a Section 1983 claim against a municipality (doc. 4, citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). Defendants Farrell and Chin contend that Plaintiff's complaint **[*10]** appears to allege that they are liable under Section 1983 for failure to supervise but that Plaintiff does not allege any facts supporting such a claim (Id.). They note that the only allegation made relating to them is that they were contacted by Plaintiff after the incident and took no corrective action (Id.). This, they argue, insufficiently states a claim for Section 1983 relief (Id.).

Plaintiff contends that the complaint identifies equal protection and substantive due process rights as the federal rights Defendants deprived J.A. of (doc. 11). Further, Plaintiff argues that the complaint sets forth inferential allegations for the material elements of a Section 1983 claim—that Defendants acted under color of law and that their conduct deprived Plaintiff of rights secured under federal law-and Defendants therefore have fair notice of the basis of Plaintiff's claims (Id., citing Leisure, 21 Fed. Appx. at 278).

In addition, Plaintiff contends that the complaint does not base the Section 1983 claim against Defendants Chin, Farrell and Milford Exempted under a respondeat superior theory but, instead, on the theory that the actions of Bothe and Boys were implicitly authorized, approved **[*11]** or knowingly acquiesced to because no corrective action was taken, leaving J.A. to return to that same classroom, and that Milford Exempted tolerated a custom that led to the deprivation of J.A.'s rights (Id.).

Section 1983, by itself, is not a source of substantive rights; instead, it is a vehicle by which plaintiffs may vindicate independent constitutional or federal statutory rights. Braley v. City of Pontiac, 906 F.2d 220, 223 (6th Cir. 1990). Although it is inartfully drafted, Plaintiff's complaint can be read to seek vindication of J.A.'s equal protection and substantive due process rights.

The Equal Protection Clause "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others

Get a Document - by Citation - 2010 U.S. Dist. LEXIS 18... Doc # 21-2    Filed: 02/24/12... Page 6 of 72 Page ID #: 497 309549e55d2a654...

5 of 12    2/24/2012 4:51 PM

similarly situated without any rational basis for the difference." TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio, 430 F.3d 783, 788 (6th Cir. 2005). Regarding substantive due process, like all individuals, public school students have a Fourteenth Amendment liberty interest in freedom from bodily injury. Webb v. McCullough, 828 F.2d 1151, 1158 (6th Cir.1987). To survive this motion on the issue of **[*12]** whether these Defendants violated J.A.'s Fourteenth Amendment substantive due process rights, Plaintiff must set forth factual allegations in the complaint from which the Court may plausibly infer that "the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Id.; Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 699 (6th Cir. 2006).

Defendants claim first that they cannot determine what the claim is alleging because it merely recites the elements of an Equal Protection claim but no factual allegations are made to support the claim (Id.). Defendants contend that Plaintiff has presented no facts from which a court could plausibly infer that J.A. was treated differently because of his sex or that similarly-situated female students were treated more favorably than he, nor, they contend, has Plaintiff presented any facts at all supporting an allegation that Defendants Farrell, Chin and Milford Exempted engaged in intentional discrimination, **[*13]** which, Defendants maintain, is the only type of discrimination prohibited by the Equal Protection clause (Id., citing Washington v. Davis, 426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)).

Plaintiff argues that the complaint does set forth adequate factual allegations to support an inference of an equal protection violation because it alleges that Defendants deliberately and intentionally failed to take remedial measures with respect to the gender discrimination J.A. suffered (doc. 11). In addition, Plaintiff notes first that the complaint indicates that J.A. was the only male student harassed about his hair and, second, that a complaint need not include allegations regarding every aspect of a prima facie case in order to survive a motion to dismiss (Id., citing Pringle v. American Red Cross, 79 Fed. Appx. 184, 185 (6th Cir. 2003)). **1**

### FOOTNOTES

**1** The Court is compelled to note here that Plaintiff once again relies on case law that predates Iqbal and Twombly. Pringle, an unpublished case from 2003, expressly relied on Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), which was abrogated by Iqbal and Twombly. Again, the Court finds troubling Plaintiff's reliance on case law that is no longer instructive.

As Iqbal instructs, **[*14]** the Court first identifies the legal conclusions contained in the complaint, which are not entitled to an assumption of truth. Iqbal, 129 S.Ct. at 1950. Here, the statement that Defendants, "through their actions and acting under color of law, subjected Plaintiff, and caused Plaintiff to be subjected to the deprivations of her rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of Ohio," is clearly a legal conclusion. This statement alone would not be enough to survive a motion to dismiss. However, Plaintiff has also set forth the following relevant factual allegations with respect to Defendants Farrell, Chin and Milford Exempted: that Chin and Farrell were aware that J.A.'s sibling had recently died; that Plaintiff made them aware of what Bothe and Boys had done to J.A.; that they took "no corrective action or minimal action;" and that, because Bothe was the only language arts teacher, J.A. was forced to return to that classroom (doc. 1).

These factual allegations are entitled to an assumption of veracity, so the question then becomes whether "they plausibly give rise to an entitlement of relief." Iqbal, 129 S.Ct. at 1950. By the **[*15]** slimmest of margins, they do as to the equal protection claim. From

these facts, the Court can plausibly infer that these Defendants did not take corrective action and effectively forced J.A. to return to the classroom of the offending teacher because they were motivated by gender animus, which could constitute a violation of J.A.'s equal protection rights. J.A. was the only male student harassed about his hair and paraded about as a girl, a fact from which one can plausibly infer that the motivation was J.A.'s gender non-conformity. See, e.g., Smith v. City of Salem, Ohio 378 F.3d 566, 575 (6th Cir. 2004). Even if J.A. were not targeted because of his gender non-conformity, the Court could plausibly infer that he was a "class of one," intentionally treated differently from the similarly-situated boys in his class with no rational basis for the difference in treatment. See, e.g., Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); Rondigo, L.L.C. v. Casco Twp., Mich., 330 Fed. Appx. 511, 519 (6th Cir. 2009). Defendants Chin and Farrell took no action to protect J.A. from this disparate treatment, and they created a situation that virtually ensured that he would suffer further **[*16]** humiliation. The allegations against Defendants Chin and Farrell therefore "plausibly give rise to an entitlement of relief" for an equal protection claim.

As to Defendant Milford Exempted, however, the Court finds that Plaintiff has failed to set forth any factual allegations supporting an inference that the school district had a policy or custom that resulted in the deprivation of J.A.'s rights. Plaintiff argues that the facts that Defendants Chin and Farrell took no or minimal corrective action against the teachers, that the actions took place in the open throughout the school, and that J.A. had to return to the offending teacher's classroom are sufficient to imply that the school district had a custom that resulted in the deprivation of J.A.'s rights. However, to succeed in a claim against the school district itself, Plaintiff must show that the district itself is the wrongdoer and must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [J.A.'s] particular injury was incurred due to the execution of that policy." Turner v. City of Taylor, 412 F.3d 629, 639 (6th Cir. 2005)(internal quotation marks and citation omitted); Vereecke v. Huron Valley School Dist., 609 F.3d 392, 403 (6th Cir. 2010). **[*17]** A "custom" must "be so permanent and well settled as to constitute a custom or usage with the force of law." Monell, 436 U.S. at 691. Although Plaintiff need not present a fully-developed factual record at the pleading stage, the complaint is completely bereft of any factual allegations from which one could reasonably infer that Defendant Milford Exempted had any type of well-settled policy that caused J.A.'s alleged injury. Therefore, Defendant Milford Exempted is entitled to dismissal of Plaintiff's 1983 claims against it. See Iqbal, 129 S.Ct. at 1949.

With respect to a substantive due process claim, Plaintiff has offered no factual allegations supporting a claim that these Defendants violated J.A.'s right to bodily integrity, let alone that they did so "inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Webb, 828 F.2d at 1158.

Consequently, to the extent Plaintiff's 1983 claim is based on a deprivation of the rights secured by the due process clause of the Fourteenth Amendment, Defendants' motion is granted. However, to the extent Plaintiff's 1983 **[*18]** claim is based on a deprivation of rights secured by the equal protection clause of the Fourteenth Amendment, Defendants' motion is denied as to Defendants Chin and Farrell. But because Plaintiff has failed to aver facts from which the Court could reasonably infer that Defendant Milford Exempted had a well-settled custom or policy that caused J.A.'s alleged injuries, the motion is granted as to Plaintiff's 1983 claim against Defendant Milford Exempted.

## 2. The Title IX Claim

As an initial matter, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

20 U.S.C. § 1681(a). Defendants Chin, Farrell and Milford Exempted School District assert that in order to establish a prima facie case of abuse, Plaintiff must establish that (1) J.A. was "subjected to [] abuse by the intentional conduct of a school employee and that the harassment was so severe, pervasive and subjectively offensive [2] that it could be said to deprive [him] of access to the education opportunities or benefits provided **[*19]** by the school;" (2) a district official had actual notice that the employee "posed a substantial risk of abuse to children in the district;" and (3) the district was deliberately indifferent to that risk (Id., citing Williams v. Paint Valley Local Sch. Dist., 400 F.3d 360, 364 (6th Cir. 2005)).

## FOOTNOTES

[2] The Court notes that the proper standard is actually "objectively" not "subjectively" offensive. See, e.g., Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 631, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999).

Defendants contend that Plaintiff has merely recited the elements of a Title IX claim but has failed to present factual allegations that, for example, any district official had actual notice that Defendants Boys and Bothe posed a substantial risk to children in the district or that Defendant Milford Exempted was deliberately indifferent to such risk (Id.). Consequently, Defendants argue that Plaintiff failed to set forth a prima facie case of a Title IX violation.

Plaintiff again cites Leisure for the proposition that a complaint need only contain inferential allegations regarding the material elements of a claim to sustain a recovery under some viable legal theory and contends that the complaint here **[*20]** does that with respect to Title IX (doc. 11). Plaintiff argues that the complaint alleges inaction and a failure to take remedial action because it alleges that Defendants were immediately informed of the actions committed by Defendants Bothe and Boys, took no or minimal corrective action, and J.A. was required to return to that same classroom (Id.).

To the extent Plaintiff alleges Title IX violations against the individual Defendants Chin and Farrell, the instant motion is granted because individuals are not liable under Title IX. Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 129 S.Ct. 788, 796, 172 L. Ed. 2d 582 (2009)("Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a)...but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.").

As against Defendant Milford Exempted, the motion is denied. Plaintiff did set forth factual allegations supporting a claim that the school district acted with deliberate indifference when it was informed of the teachers' conduct, as the complaint alleges that Defendants Chin and Farrell took "no corrective action or minimal action." This is similar to the inaction alleged **[*21]** in Davis, where the Supreme Court reversed a granting of a motion to dismiss where the harassment was reported to school authorities but no disciplinary action was taken in response. See Davis, 526 U.S. at 653-54. Discovery is needed in order to ascertain more about the authorities' response here.

### 3. IIED and Negligence

Regarding Plaintiff's state-law claims, Defendants contend first that Milford Exempted, as a political subdivision, is immune from suit unless the suit falls within the statutory exceptions to the grant of immunity, and, Defendants argue, this does not (Id., citing Hubbard v. Canton City Sch. Bd. of Educ., 97 Ohio St. 3d 451, 2002 Ohio 6718, 780 N.E. 2d 543, 545-46 (Ohio 2002), citing Ohio Rev. Code § 2744.02(A)(1)). As against Defendants Chin and Farrell, Plaintiff's intentional infliction of emotional distress ("IIED") claim fails, according to

Defendants, because the complaint does not set forth facts alleging extreme and outrageous conduct since it merely asserts that Defendants Chin and Farrell failed to take significant corrective action against Defendants Bothe and Boys (Id.). With respect to Plaintiff's negligence claim, Defendants again direct the Court to Milford Exempted's political subdivision **[*22]** immunity (Id.). In addition, Defendants contend that Defendants Chin and Farrell, as employees of a political subdivision, are entitled to immunity from liability unless they acted, or failed to act, with malicious purpose, in bad faith or in a wanton or reckless manner (Id., citing Ohio Rev. Code § 2744.03(A)(6)(b)). Here, because Plaintiff has alleged only negligence, Defendants argue they are entitled to immunity.

In response to Defendants' assertion that Milford Exempted is entitled to statutory immunity on the IIED claim, Plaintiff argues that the Section 2744.02 immunity is not available to Milford Exempted because the "harassment and other actions and omissions committed by Defendants...were not of a governmental or proprietary nature" (doc. 11, citing Ohio Rev. Code § 2744.01(C)). In addition, Plaintiff argues that the facts that Defendants Farrell and Chin were informed of what happened, knew that J.A.'s sibling had recently died, took no corrective action against Defendants Bothe and Boys, and allowed J.A. to return to that classroom serve to set forth sufficient allegations that Defendants engaged in extreme and outrageous conduct (Id.). Plaintiff makes the same argument **[*23]** in response to the negligence claim, that Defendants are not statutorily immune because Defendants' actions and omissions were not governmental or proprietary functions (Id., citing Ohio Rev. Code § 2744.01(C)(1-2) and (G)(1-2)).

Essentially, Plaintiff reads the relevant sections of the Ohio Revised Code to mean that immunity is only available to political subdivisions and their employees when the acts or omissions themselves fit within the definition of "governmental or proprietary functions." Plaintiff cites to no authority for this interpretation of the statute, and such an interpretation cannot withstand any level of scrutiny. Even a superficial reading of the statute and a cursory look into the case law addressing the relevant statutes, including the only case Plaintiff cites to, demonstrate that Plaintiff misapprehends the statutes at issue here. See Terry v. Ottawa Cty. Bd. of Mental Retardation & Development, 151 Ohio App. 3d 234, 2002 Ohio 7299, 783 N.E.2d 959, 962 (Ohio Ct. App. 2002)(rejecting the argument that because defendant allegedly engaged in an intentional tort defendant was not performing either a governmental or proprietary function because such an argument confuses "tort" with "function").

To be clear, **[*24]** the concepts of "governmental function" and "proprietary function" do not relate to allegations forming the basis of a suit but, instead, to whether the entity itself is engaged in a governmental function or a proprietary function. See Ohio Rev. Code § 2744.02(A)(1)("For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental and proprietary functions. Except as provided [below], a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."); see also Doyle v. Akron, 104 Ohio App. 3d 479, 662 N.E.2d 825 (Ohio Ct. App. 1995)(operation of park for camping was "governmental function" not "proprietary function" so city was immune from negligence claim where camper fatally stabbed fellow camper); Taylor v. Boardman Twp. Local Sch. Dist. Bd. of Educ., 2009 Ohio 6528, 2009 WL 4758818 (Ohio Ct. App. 2009)(district's provision of lunches to students was "governmental function" not "proprietary function" so negligence claim for providing lunch **[*25]** contaminated with ants was barred by statutory immunity); Miller v. Van Wert Cty. Bd. of Mental Retardation & Dev. Disabilities, 2009 Ohio 5082, 2009 WL 3068807 (Ohio Ct. App. 2009)(statutory immunity applied to prevent negligent supervision claim where bus driver failed to ensure student was not left on school bus because exception to immunity for negligent operation of motor vehicle did not apply); and Alden v. Kovar, 2008 Ohio 4302, 2008 WL 3892181 (Ohio Ct. App. 2008)("The Board's responsibility to provide an education is a governmental, rather than a proprietary,

function.").

By necessary implication, Plaintiff's interpretation of the statute would require that these cases be read to mean that leaving a child on a school bus (Miller), serving lunch contaminated with ants (Taylor), and failing to prevent a fatal stabbing (Doyle) are themselves governmental or proprietary functions. Clearly, such a reading leads to absurd results. By statute, the provision of a public education system is a "governmental function," see Ohio Rev. Code § 2744.01(C)(2)(c), and Defendant Milford Exempted was, at all times relevant to this action, engaged in the provision of public education. The remaining **[\*26]** Defendants were likewise at all relevant times acting, or allegedly failing to act, in connection with the provision of public education, a governmental function.

Defendant Milford Exempted is therefore entitled to immunity on the IIED claim, and all three Defendants are entitled to immunity on the negligence claim, unless any of the statutory exceptions to the immunity applies. See, e.g., Terry, 783 N.E.2d at 962 ("The definition of a "governmental function"...expressly includes the operation of mental retardation or developmental disabilities facilities [and] MRDD was engaged in this governmental function when the alleged injuries to appellants occurred and is, consequently, generally immune from suits based upon tort claims. The alleged tortious act, that is, the employer intentional tort, must therefore meet one of the enumerated exceptions to the grant of general immunity.").

As to the IIED claim against Defendant Milford Exempted, Plaintiff expressly states that "the acts described within the Complaint...do not fall within any of the five listed exceptions to that political subdivision immunity." As to the negligence claim against all three Defendants, Plaintiff expressly states **[\*27]** the "actions and omissions do not fall within the immunity exceptions listed in Ohio Rev. Code § 2744.02(B)." The Court will not engage in a sua sponte combing of the record to disprove Plaintiff's own position or otherwise make Plaintiff's case. Plaintiff has not shown that any of the statutory exceptions applies. Therefore, granting the motion as to Defendant Milford Exempted on the IIED claim and all three Defendants as to the negligence claim is appropriate.

Regarding the IIED claim against Defendants Chin and Farrell, Plaintiff simply has not averred factual allegations sufficient to support a reasonable inference that they committed intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress in Ohio, a plaintiff must allege that: (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's **[\*28]** psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. Ekunsumi v. Cincinnati Restoration, Inc., 120 Ohio App. 3d 557, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997). Regarding the "outrageous and extreme conduct" element, the Ohio Supreme Court has stated that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community...The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities...There is no occasion for the law to intervene in every case where some one's feelings are hurt." Yeager v. Local Union 20, 6 Ohio St. 3d 369, 6 Ohio B. 421, 453 N.E.2d 666, 671 (Ohio 1983)(internal quotation marks and citation omitted). Here, Plaintiff's allegation that Defendants Chin and Farrell took "no or minimal corrective action," even knowing that J.A.'s sibling had recently died, simply does not rise to level needed to overcome the high bar for an IIED claim in Ohio, and Plaintiff has provided nothing in response to Defendants' **[\*29]** motion to suggest otherwise.

Therefore, for the reasons above, Plaintiff's state-law claims against Defendants Milford Exempted, Chin and Farrell fail, and Defendants' motion is granted as to those claims.

## B. Defendants Bothe and Boys

### 1. The 1983 & Equal Protection Claims

Defendants Bothe and Boys argue that Plaintiff has failed to establish that they acted under color of law, a necessary component of a Section 1983 claim, because they read the complaint to contain no factual allegations that Defendants' actions were anything other than a prank (doc. 9). Defendants contend that this merely establishes that they acted "in the ambit of their personal pursuits" and not under color of law (Id., citing Waters v. City of Morristown, TN, 242 F.3d 353, 359 (6th Cir. 2001)).

Defendants further contend that the complaint fails to set forth factual allegations supporting an equal protection claim and that it, at most, sets forth a claim that J.A. was treated unfairly as an individual, not because of his membership in a particular class (Id., citing Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999)).

Plaintiff argues that the "under color of law" requirement is met by the complaint because Defendants' **[*30]** actions were taken under the guise of the teachers' authority and could not have happened without the authority of their office as teachers (doc. 12). As against these Defendants, Plaintiff asserts only that the complaint sets forth a claim for an equal protection violation on the basis of gender discrimination and not also a substantive due process violation as with the other Defendants (Id.). Specifically, Plaintiff points to the fact that J.A. was the only male student harassed about his hair length and introduced as a female student to his peers (Id.). As above, Plaintiff relies on Leisure to support the contention that the complaint need only provide fair notice to Defendants and on Pringle for the contention that the complaint need not allege all of the facts required to support a prima facie case (Id.).

With respect to Defendants' argument that Plaintiff has not sufficiently established that they were operating under color of law, the Court is not persuaded. Indeed, the case relied on by Defendants cuts against more than it supports them, as Waters involved allegations relating to harassment that took place outside the context of the perpetrator's county position. See 242 F.3d at 359-60. **[*31]** Unlike the harasser in Waters, who was "'throwing his weight around' on peripheral matters that did not go to the heart of his harassing conduct," the harassment Defendants are alleged to have subjected J.A. to was done to him on school property, during class time, in front of his peers and other teachers at schools. It was their positions as teachers that gave them the authority to force him to wear his hair that way and to parade him around introducing him as a girl; their positions and the authority those positions convey go very much to the heart of their conduct. Waters expressly distinguished itself from United States v. Lanier, 73 F.3d 1380 (6th Cir. 1996), where the court found that, unlike the perpetrator in Waters, the offender in Lanier "would not have been in the same position to abuse his victims except for his official status as a state-court judge." Waters, 242 F.3d at 360. Here, Defendants indisputably would not have been in the same position to humiliate J.A. except for their positions as teachers. Defendants' argument regarding whether they were operating under color of law fails.

As was the case with the other Defendants, the Court finds that the complaint, however **[*32]** inartfully, sets forth sufficient factual allegations to survive a motion to dismiss on the Section 1983 claim alleging a violation of the equal protection clause. J.A. was the only male student harassed about his hair and paraded about as a girl, a fact from which one can plausibly infer that the motivation for such harassment was animosity toward J.A.'s gender non-conformity. See Smith, 378 F.3d at 575. Such a claim is a viable claim of gender discrimination in violation of the equal protection clause, notwithstanding Defendants'

arguments to the contrary.

The Court thus finds that denial of Defendants' motion as to the Section 1983/Equal Protection claim is appropriate.

### 2. The Title IX Claim

As noted above, individuals cannot be held liable for Title IX violations. See Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 129 S.Ct. 788, 796, 172 L. Ed. 2d 582 (2009). In response to Defendants motion, Plaintiff attempts to "recharacterize the Title IX claim as being against the defendant teachers in their official capacities" (doc. 12). First, one cannot simply "recharacterize" one's complaint in a response to a motion to dismiss, and Plaintiff cites no authority that would permit such an attempt. Second, even if **[*33]** the Court were to permit such a thing, it would not help Plaintiff's case, as Fitzgerald expressly recognizes that Title IX does not authorize suits against school officials, teachers and other individuals. Fitzgerald, 129 S.Ct. at 796. Plaintiff presents no authority for the proposition that the statute authorizes such suits if the individual is sued in her "official capacity," and neither the text of Title IX nor the supporting regulations supports such a proposition. [3] Defendants' motion as to Title IX is therefore granted.

#### FOOTNOTES

[3] Title IX provides, "No person...shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Program or activity" is defined in relevant part as being a "local educational agency, system of vocational education, or other school system." C.F.R. § 106.2 And "recipient" (one who receives the financial assistance) is defined as "any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or **[*34]** other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof."

### 3. The State Law Claims

Defendants did not, in their motion, move for dismissal of the state laws claims of IIED, negligence, assault and battery (doc. 9, moving for dismissal of "all of the alleged federal claims arising under the Fourteenth Amendment and 20 U.S.C. § 1681, et seq. asserted against them in Plaintiffs' Complaint"). Consequently, those claims remain viable at this stage in the proceedings.

### V. Conclusion

For the foregoing reasons, the Court:

> DENIES Defendants Chin, Farrell and Milford Exempted School District's Motion to Dismiss (doc. 4) as to the Section 1983/Equal Protection claim against Defendants Chin and Farrell;

> DENIES Defendants Chin, Farrell and Milford Exempted School District's Motion to Dismiss as to the Title IX claim against Defendant Milford Exempted;

2/24/2012 4:51 PM

GRANTS Defendants Chin, Farrell and Milford Exempted School District's Motion to Dismiss as to the Section 1983/Equal Protection claim against Defendants **[\*35]** Milford Exempted;

GRANTS Defendants Chin, Farrell and Milford Exempted School District's Motion to Dismiss as to any Section 1983/Substantive Due Process claim;

GRANTS Defendants Chin, Farrell and Milford Exempted School District's Motion to Dismiss as to the Title IX claim against Defendants Chin and Farrell; and

GRANTS Defendants Chin, Farrell and Milford Exempted School District's Motion to Dismiss as to all state-law claims.

Further, the Court:

DENIES Defendants Bothe and Boys' Motion to Dismiss Plaintiff's Federal Claims (doc. 9) as to Plaintiff's Section 1983/Equal Protection claim; and

GRANTS Defendants Bothe and Boys' Motion to Dismiss Plaintiff's Federal Claims as to Plaintiff's Title IX claim.


SO ORDERED.

Dated: January 5, 2011

/s/ S. Arthur Spiegel

S. Arthur Spiegel

United States Senior District Judge

Service: **Get by LEXSEE®**
Citation: **2011 U.S. Dist LEXIS 1159**
View: Full
Date/Time: Friday, February 24, 2012 - 4:51 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

2/24/2012 4:51 PM

*2011 U.S. Dist. LEXIS 123135, \**

GREGORY SMITH, Plaintiff v. WEST MANHEIM TOWNSHIP, Defendant

CIVIL ACTION NO. 1:11-CV-778

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2011 U.S. Dist. LEXIS 123135

October 25, 2011, Decided
October 25, 2011, Filed

## CASE SUMMARY:

**OVERVIEW:** A court dismissed a complaint alleging that an employer violated § 510 of ERISA, 29 U.S.C.S. § 1140, by terminating plaintiff in retaliation for his and his wife's past use of ERISA benefits and in order to interfere with his use of ERISA benefits in the future because his complaint proffered only legal conclusions to demonstrate that the employer acted with the specific intent to violate ERISA.

**OUTCOME:** Motion to dismiss granted.

**CORE TERMS:** retaliation, specific intent, interfere, cause of action, factual allegations, reasonable inference, conclusory allegations, termination, attainment, causation, legal conclusions, plead facts, leave to amend, causal connection, well-pleaded, interfering, terminated, misconduct, discharged, quotations, pension, pled, warning, benefit plan, pleading requirements, prima facie case, past use, direct evidence, protected activity, protected conduct

## LEXISNEXIS(R) HEADNOTES

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims

*HN1* Fed. R. Civ. P. 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims

*HN2* Although a court is generally limited in its review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to the facts contained in a complaint, it may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court
Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
*HN3* Federal notice and pleading rules require a complaint to provide a defendant notice of what the claim is and the grounds upon which it rests. To test the sufficiency of the complaint in the face of a Fed. R. Civ. P. 12(b)(6) motion, a court must conduct a three-step inquiry. In the first step, the court must take note of the elements a plaintiff must plead to state a claim. Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a plausible claim for relief. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Interference With Protected Rights
*HN4* Section 510 of the Employee Retirement Income Security Act (ERISA) states that it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. 29 U.S.C.S. § 1140.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Interference With Protected Rights
*HN5* A plaintiff can establish a prima facie claim of interference under § 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1140, by demonstrating: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. To demonstrate that an employer took action for the purpose of interfering with an ERISA right, a plaintiff must show the employer had the specific intent to violate ERISA. Proof that termination prevented an employee from accruing additional ERISA benefits alone is not probative of intent.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
*HN6* A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Instead, a claim must have facial plausibility with well-pled facts allowing a court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Interference With Protected Rights
*HN7* In a claim of interference under § 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1140, a plaintiff must plead facts that when taken as true allows a court to draw a reasonable inference that an employer is liable for interference with his ERISA rights. This is not an overly burdensome standard.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
Evidence > Procedural Considerations > Circumstantial & Direct Evidence
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil
Claims & Remedies > Causes of Action > Interference With Protected Rights
*HN8* In a claim of interference under § 510 of the Employee Retirement Income
Security Act (ERISA), 29 U.S.C.S. § 1140, a plaintiff is not required to plead facts
that constitute direct evidence of an employer's specific intent to interfere with his
ERISA plan. It is sufficient to plead facts that, when taken as true, constitute
circumstantial evidence of the employer's specific intent to interfere with the
ERISA plan.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
Labor & Employment Law > Discrimination > Retaliation > Statutory Application >
Employee Retirement Income Security Act (ERISA)
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil
Claims & Remedies > Causes of Action > Interference With Protected Rights
*HN9* A plaintiff establishes a prima facie of retaliatory discharge pursuant to § 510 of
the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1140, by
demonstrating that: (1) he or she participated in a statutorily protected activity;
(2) he or she was subject to an adverse employment action; and (3) there is a
causal connection between the participation and the adverse action. The causal
connection can be demonstrated through proof of either (1) an unusually
suggestive temporal proximity between the protected activity and the allegedly
retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a
causal link.

Labor & Employment Law > Discrimination > Retaliation > Elements > General Overview
*HN10* The type of facts necessary to plead causation in retaliation cases are similar
regardless of the specific cause of action.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
*HN11* Iqbal requires a court to determine whether the well-pleaded factual allegations
are sufficient to show a plausible claim for relief. This requires comparing the
factual allegations to the legal elements of a cause of action.

**COUNSEL:** **[*1]** For Gregory Smith, Plaintiff: Lalena Turchi, Wayne A. Ely, KOLMAN ELY,
P.C., Penndel, PA; Timothy M. Kolman, PRO HAC VICE, Timothy M. Kolman and Associates,
Penndel, PA.

For West Manheim Township, Defendant: David L. Schwalm, Lindsey E. Snavely, Thomas,
Thomas & Hafer, LLP, Harrisburg, PA.

**JUDGES:** CHRISTOPHER C. CONNER, United States District Judge.

**OPINION BY:** CHRISTOPHER C. CONNER

**OPINION**

**MEMORANDUM**

This is a civil action filed by plaintiff Gregory Smith ("Smith") alleging that defendant West

Manheim Township ("West Manheim") wrongfully terminated his employment in violation of Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. Presently before the court is a motion (Doc. 6) to dismiss Smith's complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court will grant the motion.

## I. Background[1]

**FOOTNOTES**

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. **[*2]** Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).

Smith began his employment with West Manheim on May 15, 1985, as an equipment operator and laborer. (Doc. 1 ¶¶ 7, 8). West Manheim offers employees ERISA benefits including but not limited to: medical insurance, a vision plan, life insurance, short and long-term disability insurance, and a pension plan. (Id ¶ 14). Smith and his wife were beneficiaries of West Manheim's pension plan. (Id ¶ 15).

On August 19, 2010, West Manheim gave Smith a written warning for "failure to follow directions." (Id ¶ 10). The warning stated that "any further issues of this type within the next six months will result in disciplinary action - up to and including termination." (Id ¶ 11). Smith avers that no issues of any type occurred during the next six months. (Id ¶ 12). Smith alleges that on February 16, 2011, West Manheim terminated him pursuant to the written warning when he was ten months away from retirement. (Id ¶¶ 8, 13).

On April 22, 2011, Smith filed suit against West Manheim. (Id) In the complaint, Smith alleges that West Manheim violated Section 510 of ERISA by purportedly **[*3]** terminating him in retaliation for the use of ERISA benefits and in order to interfere with his use of ERISA benefits in the future. (Id ¶¶ 17, 18). On June 13, 2011, West Manheim filed the instant motion (Doc. 6) to dismiss Smith's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and is ripe for disposition. (See Docs. 7, 15, 16).

## II. Standard of Review

*HN1* Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). *HN2* Although the court is generally limited in its **[*4]** review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

[HN3] Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). [*5] Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662, 129 S. Ct. at 1949. When the complaint fails to present a *prima facie* case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III. Discussion

[HN4] Section 510 of ERISA states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of [*6] any right to which such participant may become entitled under the plan

29 U.S.C. § 1140. Smith alleges that West Manheim interfered with his attainment of ERISA benefits and that he was wrongfully discharged for his and/or his wife's past use of ERISA benefits. (See Doc. 1 ¶¶ 17, 18). West Manheim contends that Smith cannot state a claim upon which relief can be granted under either theory. (See Doc. 6 ¶¶ 4, 5).

### A. ERISA Interference Claim

[HN5] A plaintiff can establish a *prima facie* claim of ERISA interference by demonstrating: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Grogan v. Duane, Morris & Heckscher, No. 90-CV-4105, 1991 U.S. Dist. LEXIS 7550, 1991 WL 98888, at *3 (E.D. Pa. June 4, 1991) (citing Gavalik v. Cont'l Can Co., 812 F.2d 834, 851-52 (3d Cir. 1987)). To demonstrate that an employer took action for the purpose of interfering with an ERISA right, a plaintiff must show the employer "had the specific intent to violate ERISA." Gavalik, 812 F.2d at 851 (citations and quotations omitted); see also DiFederico v. Rolm Co., 201 F.3d 200, 205 (3d Cir. 2000). Proof that termination prevented an employee [*7] from accruing additional ERISA benefits "alone is not probative of intent." Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 785 (3d Cir. 2007) (citation omitted).

The Supreme Court has noted that [HN6] "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. 662, 129 S. Ct. at 1949 (citations and quotations omitted). Instead, a claim must have "facial plausibility" with well-pled facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Fowler, 578 F.3d at 210

(recognizing that conclusory allegations will not suffice after Iqbal). In the instant case, Smith's complaint proffers only legal conclusions to demonstrate West Manheim acted with the specific intent to violate ERISA. Specifically, in paragraph seventeen of the complaint Smith alleges "[t]he termination was pretextual and meant to interfere with his attainment of certain ERISA benefits to which he would otherwise have become eligible." (Doc. 1 ¶ 17). Other district courts have dismissed § 510 ERISA interference claims involving similar conclusory allegations. See, e.g., Stout v. Health Mgmt. Assocs. Inc., No. CV-10-3080, 2011 U.S. Dist. LEXIS 35621, 2011 WL 1225575, at *3 (E.D. Wash. Mar. 31, 2011); **[*8]** Hollowell v. Cincinnati Ventilating Co., 711 F. Supp. 2d 751, 758-61 (E.D. Ky. 2010); Hughes v. America's Collectibles Network, Inc., No. 3:09-CV-176, 2010 U.S. Dist. LEXIS 20814, 2010 WL 890982, at *6 (E.D. Tenn. Mar. 8, 2010). Smith's complaint contains no facts from which the court can draw a reasonable inference that the defendant is liable for the misconduct alleged. Any other result would allow every discharged employee with an ERISA plan to bring a claim under § 510 of ERISA simply by stating that he or she was discharged. See Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1113 (6th Cir. 2001); see also Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 785 (3d Cir. 2007).

Smith contends that West Manheim's arguments are premature and that he is not required to demonstrate the elements of his *prima facie* case at this stage of the litigation. (Doc. 15, at 6). Smith relies on the Supreme Court's decision in **Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)** to support his contention. (Id.) However, the Third Circuit in Fowler explicitly stated that Swierkiewicz no longer remains good law in the context **[*9]** of pleading requirements. 578 F.3d at 211 ("[B]ecause Conley has been specifically repudiated by both Twombly and Iqbal, so too has Swierkiewicz, at least insofar as it concerns pleading requirements and relies on Conley.").

HN7 Smith must plead facts that when taken as true allows the court to draw a reasonable inference that West Manheim is liable for interference with his ERISA rights. This is not an overly burdensome standard and countless plaintiffs have been able to easily satisfy it in the context of § 510 ERISA interference claims. [2] See, e.g., Jenkins v. Union Labor Life Ins. Co., Inc., No. 10-CV-7361, 2011 U.S. Dist. LEXIS 100663, 2011 WL 3919501, at *6 (E.D. Pa. Sept. 7, 2011) (plaintiffs' pled sufficient facts to show that their employer acted with specific intent to violate their rights under ERISA when the complaint alleged the employer has misled the plaintiffs about the vesting requirements for the defined benefit plan and the employer terminated each plaintiff on the same day in October 2010, claiming they would not vest in the defined benefit plan until 2011); Chalfont v. U.S. Electrodes, No. 10-CV-2929, 2010 U.S. Dist. LEXIS 136891, 2010 WL 5341846, at *10 (E.D. Pa. Dec. 28, 2010) (plaintiff adequately pled an ERISA interference **[*10]** claim when he alleged that management expressed a desire to terminate him because he would be a liability if his cancer relapsed and asserted that management did not want to incur the additional costs related to a relapse); Steffy v. Liberty Life Assur. Co. of Boston, No. 09-CV-538, 2009 U.S. Dist. LEXIS 93515, 2009 WL 3255219, at *7 (W.D. Pa. Oct. 7, 2009). Smith has not satisfied his burden at this stage, thus the court will grant West Manheim's motion to dismiss Smith's ERISA interference claim. The court will grant Smith leave to amend his complaint within thirty (30) days of entry of this memorandum and order to correct the pleading deficiencies.

### FOOTNOTES

2 HN8 Smith is not required to plead facts that constitute direct evidence of West Manheim's specific intent to interfere with his ERISA plan. It is sufficient to plead facts that, when taken as true, constitute circumstantial evidence of the employer's specific intent to interfere with the ERISA plan. See Jenkins v. Union Labor Life Ins. Co., No. 10-CV-7361, 2011 U.S. Dist. LEXIS 100663, 2011 WL 3919501, at *6 (E.D. Pa. Sept. 7, 2011).

## B. ERISA Retaliation Claim

[HN9] A plaintiff establishes a *prima facie* of retaliatory discharge pursuant to § 510 of ERISA by demonstrating that: (1) he or she participated **[*11]** in a statutorily protected activity; (2) he or she was subject to an adverse employment action; and (3) there is a causal connection between the participation and the adverse action. See Eckelkamp v. Beste, 315 F.3d 863, 871 (8th Cir. 2002); C.F. Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995) (listing the elements of a Title VII retaliation claim). The causal connection can be demonstrated through proof of either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (discussing retaliation in the context of a § 1983 claim); See Eckelkamp, 315 F.3d at 871.

In the instant case, Smith only proffers the conclusory allegation that "[t]he Defendant's conduct in terminating Plaintiff's employment, was in violation of Section 510 of ERISA, in that the action was designed to retaliate against Plaintiff for his/his wife's past use of ERISA benefits, including hospitalization benefits, and/or to interfere with his future use of benefits including but not limited to, hospitalization benefits **[*12]** and his pension rights." (Doc. 1 ¶ 18). This is insufficient to state a ERISA retaliation claim upon which relief can be granted. The complaint fails to allege that West Manheim was aware of either Smith's or his wife's past use of ERISA benefits and fails to allege facts that when taken as true would suggest "unusually suggestive temporal proximity" or "a pattern of antagonism coupled with timing." (See Doc. 1). Smith's conclusory allegation of causation is insufficient to survive a motion to dismiss after Iqbal. **3** Compare Mitchell v. Lupert, No. 3:09-CV-00789, 2011 U.S. Dist. LEXIS 18034, 2011 WL 742042, at *6 (M.D. Pa. Feb. 24, 2011) (granting defendants' motion to dismiss plaintiff's retaliation claim in a § 1983 case because plaintiff had "not alleged facts from which a causal connection between his constitutionally protected conduct and the alleged adverse actions [could] be inferred"); Washington v. Whittington, No. 10-CV-0356, 2010 U.S. Dist. LEXIS 101489, 2010 WL 3834589, at *5 (W.D. La. Aug. 19, 2010) (noting that a plaintiff must "either adduce direct evidence of motivation, or set forth a chronology of events from which retaliation may plausibly be inferred" in a First Amendment retaliation case) (citation and quotations omitted) **[*13]** with Jewell v. Lincare, Inc., No. 1:11-CV-195, 2011 U.S. Dist. LEXIS 105022, 2011 WL 4336710, at *4 (D. Me. Sept. 15, 2011) (holding that plaintiff adequately pled causation for his retaliation claim under the False Claims Act when he alleged that his termination occurred shortly "after making his protected conduct known to his supervisor"). Thus, the court will grant West Manheim's motion to dismiss Smith's ERISA retaliation claim. **4** The court will grant Smith leave to amend his complaint within thirty (30) days of entry of this memorandum and order to correct the pleading deficiencies in his ERISA retaliation claim.

### FOOTNOTES

**3** [HN10] The type of facts necessary to plead causation in retaliation cases are similar regardless of the specific cause of action.

**4** Smith's contention that the casual determination is not a proper subject for a motion to dismiss is without merit. (Doc. 15, at 8). [HN11] Iqbal requires the court to determine whether the well-pleaded factual allegations are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555. This requires comparing the factual allegations to the legal elements of the cause of action. See Santiago, 629 F.3d at 130-31. **[*14]** No exception

exists for causation.

### IV. Conclusion

For the foregoing reasons, the motion (Doc. 6) to dismiss is granted. An appropriate order follows.

/s/ Christopher C. Conner

CHRISTOPHER C. CONNER

United States District Judge

Dated: October 25, 2011

### ORDER

AND NOW, this 25th day of October, 2011, upon consideration of the motion (Doc. 6) to dismiss, filed by defendant West Manheim Township, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

> 1. The motion (Doc. 6) to dismiss is GRANTED.
>
> 2. Within thirty (30) days of entry of this order, Plaintiff Gregory Smith may file an amended complaint.

/s/ Christopher C. Conner

CHRISTOPHER C. CONNER

United States District Judge

Service:  **Get by LEXSEE®**
Citation:  **2011 U.S. Dist. LEXIS 123135**
View:  Full
Date/Time:  Sunday, February 19, 2012 - 11:17 PM EST

In

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

2010 U.S. Dist. LEXIS 65411, *

GRACE ELLIS ADAMS, Plaintiff, v. U.S. BANK, Defendant.

Case No. 10-10567

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

2010 U.S. Dist. LEXIS 65411

July 1, 2010, Argued
**July 1, 2010**, Decided
**July 1, 2010**, Filed

**SUBSEQUENT HISTORY:** Related proceeding at Adams v. Mortgage Elec. Registration Sys., 2012 U.S. Dist. LEXIS 3733 ( E.D. Mich., Jan. 12, 2012)

**PRIOR HISTORY:** Adams v. Wilmington Fin., 2008 U.S. Dist. LEXIS 58468 ( E.D. Mich., Aug. 1, 2008)

**CORE TERMS:** modification, Fair Housing Act, Equal Credit Opportunity Act ECOA, protected class, discovery, amend, extension of time, factual allegations, prima facie case, injunction, fraudulent, destroyed, lawsuit, moot, unpublished opinion, claim of fraud, cause of action, national origin, false statements, suffered injury, misrepresentation, burden-shifting, qualification, particularity, plausibility, recitation, homeowners, mortgage, religion, survive

**COUNSEL:** **[*1]** Grace Ellis Adams, Plaintiff, Pro se, Rochester Hills, MI.

For U.S. Bank, Defendant: Davidde A. Stella, Edward C. Cutlip, Jr., Kerr, Russell, Detroit, MI.

**JUDGES:** PRESENT: THE HONORABLE PATRICK J. DUGGAN, U.S. DISTRICT COURT JUDGE.

**OPINION BY:** PATRICK J. DUGGAN

**OPINION**

**OPINION AND ORDER**

At a session of said Court, held in the U.S. District Courthouse, Eastern District of Michigan, on July 1, 2010.

PRESENT: THE HONORABLE PATRICK J. DUGGAN U.S. DISTRICT COURT JUDGE

Plaintiff Grace Ellis Adams ("Plaintiff") filed a *pro se* complaint against Defendant U.S. Bank ("U.S. Bank") on February 10, 2010, alleging violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3631, the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, and fraud in violation of Michigan law. Presently before the Court are the following motions: (1) U.S. Bank's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c), filed March 31, 2010; (2) Plaintiff's motion to amend her complaint to add two U.S. Bank employees as

defendants, filed April 21, 2010; and (3) Plaintiff's motion for injunction and extension of time for discovery, filed May 5, 2010. The motions have been fully briefed. On May 27, 2010, this Court issued a notice informing the **[*2]** parties that it is dispensing with oral argument with respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court grants U.S. Bank's motion and denies Plaintiff's motions as moot.

## I. Factual and Procedural Background

According to a lawsuit Plaintiff previously filed against U.S. Bank, Wilmington Finance, AIG Federal Savings Bank, and Amerimortgage, Plaintiff obtained a mortgage loan from Wilmington Finance which U.S. Bank serviced. *Adams v. Wilmington Fin.*, No. 07-15494, 2008 U.S. Dist. LEXIS 58468, 2008 WL 2998660 (E.D. Mich. Aug. 1, 2008) (Cox, J.) (unpublished opinion). Plaintiff claimed she could not afford the payments on the loan and that she spoke with U.S. Bank representatives about modifying her loan. Plaintiff alleges in the present lawsuit that she completed and sent U.S. Bank several loan modification applications between January 2008 and November 2009; however, when she contacted U.S. Bank, its representatives told her there was no record of any loan modification documents from her in the bank's files. [1]

### FOOTNOTES

[1] In her response to U.S. Bank's motion to dismiss, Plaintiff alleges that U.S. Bank employees also told her that she was denied a loan modification. **[*3]** (Pl.'s Resp. at PP 1, 9-10, 16.)

In response, Plaintiff filed this lawsuit alleging fraud and violations of the federal Fair Housing Act and Equal Credit Opportunity Act. In support of her claims, Plaintiff alleges that U.S. Bank and its employees "tampered with and destroyed" Plaintiff's loan modification documents.

## II. Standard for Motion to Dismiss

The standard of review for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c) is the same as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule **12(b)(6)**. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A motion to dismiss pursuant to Rule **12(b)(6)** tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a **cause of action** . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1964-65, 1974, 167 L. Ed. 2d 929 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further **[*4]** factual enhancement.'" *Ashcroft v. Iqbal*,     U.S.     , 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court reiterated in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550

U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has **set forth** a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.; see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). This presumption, however, is not applicable to legal conclusions. **[*5]** *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a **cause of action**, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-65).

## III. Applicable Law and Analysis

As stated previously, Plaintiff alleges that U.S. Bank's conduct with respect to her loan modification documents violated the federal Fair Housing Act and Equal Credit Opportunity Act and constituted fraud in violation of Michigan law.

Section 3605 of the Fair Housing Act ("FHA") makes it unlawful for a person or entity engaged in residential real estate transactions to discriminate against a person because of the person's race, color, religion, sex, handicap, familial status, or national origin. 42 U.S.C. § 3605. The burden-shifting standard the Supreme Court adopted in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), applies to claims under this section. *See Mich. Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 346 (6th Cir. 1994) *see also Mencer v. Princeton Square Apts.*, 228 F.3d 631, 634 (6th Cir. 2000). The plaintiff has the initial burden of establishing a ***prima facie* case** of discrimination by **[*6]** showing that: (1) she is a member of a protected class; (2) she applied for and qualified for a loan modification; (3) her application was denied; and (4) the defendant continued to modify loans for non-members of the protected class. *Babin*, 18 F.3d at 346 (citing *Secretary, United States Dep't of Housing & Urban Dev. on behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990)).

U.S. Bank moves to dismiss Plaintiff's FHA claim, contending that Plaintiff fails to allege facts to support her claim. This Court agrees. Plaintiff at no time identifies herself as a member of a protected class in her complaint. [2] She also fails to allege that she qualified for a loan modification and was denied relief despite her qualification. Therefore, this Court dismisses Plaintiff's FHA claim.

## FOOTNOTES

2 While Plaintiff seeks to amend her complaint, she only is attempting to add two employees as defendants. The requested amendment, therefore, does not cure the deficiencies in her pleadings discussed herein.

The Equal Credit Opportunity Act ("ECOA") similarly prohibits creditors from discriminating against a credit applicant based on the latter's race, color, religion, national origin, sex, or marital status. 15 U.S.C. § 1691(a)(1). The *McDonnell-Douglas* **[*7]** burden-shifting standard applies to a claim under this statute as well. *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 876 (6th Cir. 2002). To establish a ***prima facie* case**, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was an applicant for credit; and (3) she qualified for credit; and (4) despite her qualifications, the creditor denied her request. *Id.* at 877.

U.S. Bank seeks dismissal of Plaintiff's ECOA claim because she also fails to **set forth** sufficient allegations to support a ***prima facie* case** under the statute. Again, and for the same reasons indicated with respect to Plaintiff's FHA claim, this Court agrees and dismisses Plaintiff's ECOA claim.

2/24/2012 12:46 PM

With respect to Plaintiff's fraud claim, U.S. Bank first argues that Plaintiff fails to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirements. To meet Rule 9(b)'s requirements, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008). U.S. Bank also argues that Plaintiff **[*8]** fails to allege facts to support the elements of a fraud claim: (1) that the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that the defendant made the misrepresentation with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance on it; and (6) suffered injury. *Moross Ltd. P'ship v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 515-16 (6th Cir. 2006) (quoting *U.S. Fid. & Guar. Co. v. Black*, 412 Mich. 99, 313 N.W.2d 77, 82 (1981)).

In her complaint, Plaintiff fails to **set forth** allegations sufficient to satisfy Rule 9(b)'s particularity requirements. Yet in response to U.S. Bank's motion, Plaintiff does identify the alleged fraudulent statements, the U.S. Bank employees who allegedly made the statements, and when the statements were made. Plaintiff, however, does not **set forth** sufficient allegations to establish that she relied on the allegedly false statements in her complaint or in her response to U.S. Bank's motion.

Plaintiff alleges that employees **[*9]** of U.S. Bank made material representations regarding her loan modification documents. According to Plaintiff, she or her representative submitted loan modification documents to U.S. Bank on seven occasions from January 10, 2008 through November 4, 2009. Plaintiff claims she verified with U.S. Bank employees that the loan modification documents had been received; but, when she subsequently called the bank, she was told her application had been denied and/or that there was no documentation in her account file reflecting that an application had been received. Plaintiff claims that U.S. Bank never intended to consider her for a loan modification and destroyed or intentionally misplaced her documents. She states in her complaint: "The fact that US Bank does not have Plaintiff's loan modification documentation[] on file could not have occurred by chance and can not be explained by factors unrelated to fraud." (Compl. at 2.)

Plaintiff's allegations fail to **set forth** facts establishing that she relied on the alleged false statements by U.S. Bank's employees. In response to U.S. Bank's motion, Plaintiff states: ". . . U.S. Bank falsely misrepresented to Plaintiff that they would consider her **[*10]** for the HAMP Program [sic] [Home Affordable Modification Program] and she relied on it." (Pl.'s Resp. P 1.) This is the only statement in Plaintiff's pleadings relevant to the reliance element; Plaintiff's complaint is devoid of any factual allegations with respect to this element. But even if the allegations in her response brief appeared in her complaint, they are insufficient to support her claim of fraud as they constitute nothing more than a bare recitation of the elements without supporting factual content.

Moreover, the fact that U.S. Bank may have informed Plaintiff that it would consider her for a loan modification and then lost or destroyed her loan modification application does not imply that she suffered injury as a result. Plaintiff already was indebted for the amount of the mortgage. She does not allege that she qualified for a loan modification if U.S. Bank had considered her applications. Federal district courts have held that homeowners do not have a right to a loan modification under HAMP. *See, e.g., Benito v. Indymac Mortgage Servs.*,     F. Supp. 2d    , 2010 U.S. Dist. LEXIS 51259, 2010 WL 2130648, at *7 (D. Nev. May 21, 2010) (finding that the HAMP contract between the federal government and **[*11]** lenders neither requires lenders to make any particular loan modification nor grants homeowners a right to modification); *de la Salle v. America's Wholesale Lender*, No. S-09-2701, 2010 U.S. Dist.

LEXIS 36319, at *3-4 (E.D. Cal. Apr. 13, 2010) (unpublished opinion); *Williams v. Geithner*, No. 09-1959, 2009 U.S. Dist. LEXIS 104096, at *6-7 (D. Minn. 2009). In short, Plaintiff fails to state a claim of fraud upon which relief may be granted.

For the above reasons, the Court grants U.S. Bank's motion to dismiss. Plaintiff's motion to amend her complaint to add two U.S. Bank employees as defendants and her request for an injunction and an extension of time to conduct discovery therefore are moot.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss is **GRANTED;**

**IT IS FURTHER ORDERED**, that Plaintiff's motion to amend her complaint and motion for an injunction and extension of time for discovery are **DENIED AS MOOT.**

/s/ PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

**JUDGMENT**

Plaintiff Grace Ellis Adams filed a *pro se* complaint against Defendant U.S. Bank ("U.S. Bank") on February 10, 2010, alleging violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3631, the Equal Credit Opportunity Act, **[*12]** 15 U.S.C. §§ 1691-1691f, and fraud in violation of Michigan law. U.S. Bank filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c) on March 31, 2010, which this Court granted in an Opinion and Order entered on this date.

Accordingly,

**IT IS ORDERED, ADJUDGED, AND DECREED,** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

DATE: July 1, 2010

/s/ PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

Source:      **Legal > / . . . / > MI Federal District Courts** [i]
More Like:   **HN8 - While the Fed. R. Civ. P. 12(b)(6) standard does not require that the plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim.** Khalik v. United Air Lines, 2012 U.S. App. LEXIS 2375 (10th Cir. February 6, 2012, Filed )
Mandatory Terms: **date from 02/24/2007**
View:         Full
Date/Time:   Friday, February 24, 2012 - 12:46 PM EST

* Signal Legend:
● -  Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
(A) - Citing Refs. With Analysis Available
(i) - Citation information available

1:11-cv-13094-TLL-CEB   Doc # 21-2   Filed 02/24/12   Pg 27 of 72   Pg ID 518

https://www.lexis.com/research/retrieve?_m=22fa7a20a7c02328211...

* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

2/24/2012 12:46 PM

*2009 U.S. Dist. LEXIS 101348, \*; 92 Empl. Prac. Dec. (CCH) P43,735*

FRED KASTEN, DENISE McKEOWN, DEAN ROBERSON, THOMAS SEP, CHARLES WILLIAMS, KEITH CRUTCHFIELD, and VINCENT SUTHERLAND, Plaintiffs, v. FORD MOTOR COMPANY, a corporation, Defendant.

CASE NUMBER: 09-11754

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

2009 U.S. Dist. LEXIS 101348; 92 Empl. Prac. Dec. (CCH) P43,735

**October 30, 2009**, Decided
**October 30, 2009**, Filed

**CORE TERMS:** factual allegations, plausibility, older workers, discrimination claims, prima facie case, forced-ranking, conclusory, amend, flexible, survive, wearing, gender, skirt, leave to amend, employment discrimination, civil actions, factual matter, citation omitted, fair notice, disproportionately, less-qualified, discriminatory, termination, heightened, severance, salaried, replaced, younger, infer, fired

**COUNSEL:  [\*1]** For Fred Kasten, Plaintiff: Beth M. Rivers, Pitt, Dowty, Royal Oak, MI; Cary S. McGehee, Kevin M. Carlson, Pitt, McGehee, Royal Oak, MI.

For Denise McKeown, Dean Roberson, Thomas Sep, Charles Williams, Keith Crutchfield, Plaintiffs: Kevin M. Carlson, LEAD ATTORNEY, Cary S. McGehee, Pitt, McGehee, Royal Oak, MI; Beth M. Rivers, Pitt, Dowty, Royal Oak, MI.

For Ford Motor Company, Defendant: Donna J. Donati, Miller, Canfield, Detroit, MI; Eugene Scalia, Gibson, Dunn, Washington, DC; John H. Willems, Miller, Canfield, (Detroit), Detroit, MI.

**JUDGES:** HONORABLE Victoria A. Roberts, United States District Judge.

**OPINION BY:** Victoria A. Roberts

**OPINION**

**ORDER DENYING FORD'S MOTION TO DISMISS AND GRANTING PLAINTIFFS LEAVE TO AMEND COMPLAINT**

**I. INTRODUCTION**

Plaintiffs are seven former salaried employees of Defendant Ford Motor Co., who claim they were laid off in violation of various state and federal anti-discrimination laws. Ford moves to dismiss (Dkt. # 5), relying on the new pleading standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Plaintiffs contend their Complaint is adequately pled, but in the alternative, they ask for leave to amend.

The Court **DENIES** Ford's Motion  **[*2]** to Dismiss and **GRANTS LEAVE** to amend.

## II. BACKGROUND

Plaintiffs lost their jobs as part of Ford's attempt to shrink its labor force in the face of a severe economic downturn. They claim that for several years, Ford used a forced-ranking employee evaluation system known as the Performance Contribution Assessment ("the PCA"). The PCA compares employee performance using a pre-specified distribution ranking system. Plaintiffs claim its original purpose was to determine which employees deserved merit salary increases and bonuses. However, according to Plaintiffs, forced-ranking systems like this one favor young employees at the expense of older workers.

The Complaint alleges that in mid-2008, Ford implemented a company-wide Salaried Involuntary Reduction Process ("the SIRP"), the purpose of which is to select workers for severance. According to its operative language, the SIRP uses PCA evaluations to determine which employees should be let go. Plaintiffs argue the resulting layoffs disproportionately targeted older workers, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws ("M.C.L.") § 37.2201 et seq. **[*3]**  (Counts I-IV).

Some plaintiffs also claim the use of forced-ranking assessments caused them to be laid off for other unlawful reasons, such as gender (Counts V & VII, violation of ELCRA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.), race (Counts VI & VIII, violation of ELCRA and Title VII), medical leave (Count IX, violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.), and pursuing workers' compensation benefits (Count X, violation of Michigan's Workers' Disability Compensation Act ("WDCA"), M.C.L. § 418.301(11) et seq.).

Plaintiffs filed their Complaint on May 6, 2009. Twelve days later, the Supreme Court issued its opinion in *Ashcroft v. Iqbal*, which substantially altered the standard on a motion to dismiss. Ford asked Plaintiffs whether they intended to amend the Complaint in light of *Iqbal*; they declined. On July 15, 2009, Ford moved to dismiss.

## III. STANDARD OF REVIEW

In *Ashcroft v. Iqbal*, the Supreme Court held that to survive a motion to dismiss under Rule **12(b)(6)**, "a  **[*4]** complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The new pleading standard was first **set forth** in *Bell Atl. Corp. v. Twombly*, an antitrust case. However, in *Iqbal* the Court declared the *Twombly* standard would henceforth apply to "all civil actions." *Iqbal*, 129 S. Ct. at 1953 (*quoting* Fed. R. Civ. P. 1).

In *Iqbal*, the Court explained that there are two "working principles" on a motion to dismiss. *Id.* at 1949. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a **cause of action,** supported by mere conclusory statements, do not suffice." *Id.* (*citing Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a **cause of action** will not do") (citation omitted) (alteration in original)). The Court emphasized that legal conclusions couched as factual allegations  **[*5]** do not satisfy a plaintiff's burden to plead "sufficient factual matter" in its complaint. *Id.* at 1949-50.

The second principle of *Iqbal* is that "only a complaint that states a plausible claim for relief

survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (*citing Twombly*, 550 U.S. at 556). The Court explained that determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).

Together, *Iqbal* and *Twombly* form a substantial departure from the traditional standard **set forth** by Justice Black in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). *Conley* admonished courts to dismiss claims only if "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Id.* at 45-46 (emphasis added) (footnote omitted). After *Iqbal*, however, if "the well-pleaded facts do not permit the court to infer *more than the mere possibility* of misconduct, the complaint **[*6]** has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (emphasis added).

## IV. ANALYSIS

Plaintiffs' claims can be divided between those alleging discrimination based on age, or other protected factors. For their age-related claims, Plaintiffs allege they are over 40 years-old, that Ford let them go while retaining younger, less-qualified workers for jobs they were qualified to perform, and that Ford employed a policy, the SIRP, which disproportionately targeted older workers because severance determinations were based on PCA evaluations. Plaintiffs claim that integrating PCA evaluations into the SIRP amounted to intentional discrimination, because Ford knew that employment decisions based on forced-ranking evaluations tend to grossly favor younger employees at the expense of older workers. In the alternative, Plaintiffs allege the SIRP is a facially neutral employment policy which, in practice, has a disparate impact on older salaried workers.

The Complaint's non age-related claims concern three specific plaintiffs, Keith Crutchfield, Dean Roberson and Denise McKeown. Messrs. Crutchfield and Roberson allege **[*7]** they had medical conditions which caused them to take FMLA-protected leaves of absence. They claim these health issues factored into the PCA's assessment of their performance, resulting in lower evaluations and causing the SIRP to terminate them while retaining other, healthier employees. Mr. Roberson also claims he was terminated in retaliation for requesting WDCA benefits.

Lastly, Ms. McKeown claims Ford intentionally discriminated against her on the basis of her African-American race and her gender. Ms. McKeown's factual allegations are the same as her co-plaintiffs, except that she claims Ford let her go while retaining less-qualified male and Caucasian employees.

Ford argues the Complaint is sparse and conclusory, and lacks sufficient factual matter to state a plausible claim for relief. Ford suggests that, based on the facts alleged, it is more likely that Plaintiffs' layoffs resulted from a rational decision to trim the company's work force based on job performance, rather than from discriminatory intent. *See Iqbal*, 129 S. Ct. at 1950-51 (in *Twombly*, parallel conduct among companies was consistent with an unlawful agreement between them, but was "more likely explained" by unchoreographed **[*8]** free-market behavior; likewise, Mr. Iqbal's allegations, while consistent with intentional discrimination, were "likely lawful and justified" by a nondiscriminatory policy aimed at detaining people suspected of being linked to the attacks of September 11, 2001). In any case, Ford submits, the Complaint fails to provide sufficient facts to state a plausible claim for relief.

## A. *Swierkiewicz, Twombly*, and the "Flexible Plausibility Standard"

Plaintiffs contend their Complaint is sufficient to withstand a motion to dismiss, and argue the pleading standard for employment discrimination claims is not governed by *Twombly* or *Iqbal*, but by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

The question posed in *Swierkiewicz* was whether plaintiffs alleging discrimination in employment have to plead each element of the **prima facie case** under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to state a claim for relief. *Swierkiewicz*, 534 U.S. at 508. Under *McDonnell Douglas*, to state a claim for discrimination based on circumstantial evidence, a plaintiff must allege: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances **[*9]** that support an inference of discrimination." *Swierkiewicz*, 534 U.S. at 510 (*citing McDonnell Douglas*, 411 U.S. at 802) (other citations omitted). The *Swierkiewicz* Court held that plaintiffs are not required to plead each of these four elements, because "[t]he **prima facie case** under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id*. at 510.

Plaintiffs argue that *Swierkiewicz* creates an exception to *Twombly's* pleading standard for employment discrimination claims. However, this analysis is deficient on one fundamental point: *Swierkiewicz* does not profess to construe the pleading standard of Fed. R. Civ. P. 8(a); on the other hand, *Twombly* is squarely "based on [the Court's] interpretation and application of Rule 8." *Iqbal*, 129 S. Ct. at 1953. *Twombly* retired the "no-set-of-facts" standard and replaced it with the requirement to plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 563, 570. *Swierkiewicz* simply held that pleading every element of the *McDonnell Douglas* **prima facie case** is not necessary to state a claim for employment discrimination. Therefore, read together, *Swierkiewicz* and *Twombly* require employment **[*10]** discrimination plaintiffs to allege sufficient material facts to state a plausible claim for relief, but do not mandate doing so on every element of the *McDonnell Douglas* **prima facie case.**

Plaintiffs also contend that *Swierkiewicz, Twombly* and *Iqbal* create a flexible pleading standard, which varies based on the substantive claims and factual context of each case. According to Plaintiffs, whereas *Swierkiewicz* rejected a heightened pleading standard for employment discrimination claims, *Twombly* and *Iqbal* ruled that for certain complex issues - such as antitrust claims and qualified immunity defenses - it is necessary to plead additional facts simply to state a claim for relief. Plaintiffs argue the lesson of *Twombly* and *Iqbal* is that courts must analyze each claim in a complaint individually to determine whether, on that particular claim, a plaintiff must plead more facts to survive a motion to dismiss. Since their discrimination claims are akin to those in *Swierkiewicz*, Plaintiffs conclude they are not obligated to plead additional facts.

In *Iqbal*, the court of appeals interpreted *Twombly* in much the same way as Plaintiffs do, saying it created a "flexible 'plausibility standard,' which **[*11]** obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal*, 129 S. Ct. at 1944 (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original)). Because the Supreme Court's ruling does not explicitly reject this interpretation, Plaintiffs argue it is correct. In this Court's opinion, Plaintiffs read too much into *Iqbal*. If the Supreme Court had meant to endorse a flexible plausibility standard, it would have said so explicitly. As written, *Iqbal* is more appropriately read as clarifying that *Twombly* raised the pleading standard for all actions.

## B. Sufficiency of Plaintiffs' Factual Allegations

Regardless of whether Plaintiffs' Complaint touches on every element of the *McDonnell Douglas* **prima facie case**, it fails to allege sufficient material facts.

This flaw is common to every count, but it is particularly glaring in Mr. Roberson's WDCA claim and Ms. McKeown's race and gender discrimination claims. Mr. Roberson and Ms. McKeown state the same core facts as their co-plaintiffs: they are members of a protected class who were selected for termination by a labor-reduction program **[*12]** which discriminates on the basis of their age. For his WDCA claim, Mr. Roberson repeats these allegations, and simply adds that Ford also severed him for requesting workers' compensation benefits. Ms. McKeown does the same for her race and gender discrimination claims, except that she asserts Ford retained less-qualified male and Caucasian employees to work jobs for which she was qualified. Undoubtedly, these are the kind of minimalistic pleading the Supreme Court had in mind when it held that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Furthermore, given the context of this lawsuit, and the fact that all Plaintiffs but one are Caucasian men, Ms. McKeown's conclusory statement does not provide a foundation upon which to infer "more than the mere possibility" of race or gender-based discrimination. *Id.* at 1950.

In defending the sufficiency of their Complaint, Plaintiffs cite the *post-Iqbal* case of *Jenkins v. New York City Transit Auth.*, No. 08 Civ. 6814, 2009 WL 1940103, 646 F. Supp. 2d 464, 2009 U.S. Dist. LEXIS 56008 (S.D.N.Y. June 30, 2009) (unpublished). In *Jenkins*, the district court upheld a complaint **[*13]** filed by a bus operator who claimed she was fired because her religion prohibited wearing pants with her uniform. 646 F. Supp. 2d 464, 2009 U.S. Dist. LEXIS 56008 at *1. The plaintiff's factual pleadings span four paragraphs of the court's opinion, and include allegations that: upon hiring, she was told wearing a skirt was not a problem, and that other employees made similar requests; during training, she was informed wearing pants was strictly required, and had to sign a copy of the employer's uniform policy; she was singled out for ridicule and harassment by another employee; she was initially measured for a skort (a pair of shorts made to resemble a skirt), but later told she had to wear culottes (women's trousers cut to resemble a skirt); when her pastor said culottes were unacceptable, she was told to resign or be fired; she saw a female bus driver wearing a skirt. *Id.* at *3-6. These allegations are significantly more detailed than Plaintiffs' Complaint, and the Court finds that *Jenkins* is of no support to Plaintiffs.

Plaintiffs also rely on *Swierkiewicz*, where the facts alleged are more limited. In *Swierkiewicz*, the plaintiff was chief underwriting officer for a reinsurance company controlled by a **[*14]** French corporation. 534 U.S. at 508. He claimed the company's French CEO demoted and replaced him with a 32-year-old French national who had only a year of underwriting experience. *Id.* He also alleged the CEO isolated him in the company, excluded him from business decisions and meetings, and refused to meet to discuss his situation. *Id.* at 509. The Supreme Court held the complaint was sufficient to state a claim for a national origin and age discrimination, because it "detailed the events leading to [the plaintiff's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* at 514.

Compared to *Jenkins*, the allegations in *Swierkiewicz* are more cursory, but they still provide more factual detail than Plaintiffs' Complaint. The Complaint states Plaintiffs' ages, but does not name those who replaced them, or give their ages. It identifies the policy which resulted in their severance, but does not explain why forced-ranking procedures disproportionately target older workers. It claims Ford was aware that such programs have discriminatory propensities, yet it does not state where this awareness **[*15]** came from, or supply evidence from which to infer that Ford designed the SIRP purposefully to cut older workers from its ranks.

The Court has no doubt Plaintiffs' Complaint would have survived a motion to dismiss before *Iqbal* expanded *Twombly* to all civil actions. However, Plaintiffs' factual allegations are too

meager to satisfy the Supreme Court's newly-announced standard.

## C. Amending the Complaint

Because this action commenced before *Iqbal* was decided, equity justifies allowing Plaintiffs to amend their Complaint. *See Iqbal*, 129 S. Ct. at 1954 (remanding to the court of appeals to "decide . . . whether to remand to the District Court so that respondent can seek leave to amend his deficient complaint."). The Court believes this is true even though Plaintiffs declined Ford's entreaties to amend before its motion was filed.

To hold that Plaintiffs fail to state a proper claim for relief is one thing, but to explain what it would take to "nudge[ ] their claims across the line from conceivable to plausible" is quite another. *Twombly*, 550 U.S. at 570. Ford argues Plaintiffs should flesh out their Complaint by, *inter alia*, supplying their original PCA scores, showing how age contributed to **[*16]** lowering them, explaining why these scores would have prevented Plaintiffs from being fired, identifying employees who were either younger, healthier, or not members of a protected class and were retained to work jobs for which Plaintiffs were qualified, providing evidence of discriminatory intent, and more. These are merely suggestions, however; neither *Twombly* nor *Iqbal* require Plaintiffs to allege all, or even most of these facts.

The "short and plain statement" standard of Fed. R. Civ. P. 8(a) still governs, and *Twombly* and *Iqbal* did not modify Rule 11(b), which allows plaintiffs, after a reasonable inquiry under the circumstances, to make specifically identified, unsubstantiated factual assertions which "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Finally, the Supreme Court unanimously upheld the sufficiency of the complaint in *Swierkiewicz*, even though its factual allegations were by no means extensive. Although *Swierkiewicz* endorsed the now-defunct, "no-set-of-facts" standard, *Twombly* cites *Swierkiewicz* with approval, and suggests that that complaint contained enough facts to state a plausible claim for relief. *Twombly*, 550 U.S. at 570. **[*17]** *Iqbal* clarifies that *Twombly* applies to all civil cases, and does not mention *Swierkiewicz*.

While *Iqbal* did not specifically overrule *Swierkiewicz*, it remains to be seen whether *Swierkiewicz's* rejection of a heightened pleading standard in civil rights cases, and its implicit endorsement of a liberal pleading standard, can be reconciled with *Iqbal's* plausibility pleading standard. Reading *Swierkiewicz* and *Iqbal* together, one can only say with certainty that: (1) the purpose of a complaint remains giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests[,]" *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47 (omission in *Twombly*)); (2) the plain statement requirement and simplified pleading standard of Fed. R. Civ. P. 8(a) still govern civil actions, except where the heightened standard of Rule 9 applies; (3) providing "fair notice" demands rejecting conclusory statements which are devoid of factual context, *Iqbal*, 129 S. Ct. at 1954; and (4) an employment discrimination plaintiff is not required to plead every element of the *McDonnell Douglas* **prima facie case** to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. at 515.

The reconciliation **[*18]** ends there. What is not clear going forward from *Iqbal*, is how much factual content is necessary to give the defendant fair notice, and how much content is necessary to "nudge claims" from merely conceivable to plausible. There is no roadmap for courts to distinguish between conclusory and well-pled factual allegations, and then determine whether such well-pled facts plausibly give rise to an entitlement to relief. If, as the Supreme Court suggests, determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 129 S. Ct. at 1950, there may be no exacting standard for courts to use in evaluating complaints under

Fed. R. Civ. P. 8(a).

## V. CONCLUSION

The Court **DENIES** Ford's Motion to Dismiss, and **GRANTS LEAVE** for Plaintiffs to amend their Complaint by **November 13, 2009.** Ford's response must be filed by **December 3, 2009.** The Court will hold a scheduling conference by telephone on **December 10, 2009 at 10:00 am.** The Court will initiate the conference call.

## IT IS ORDERED.

Dated: October 30, 2009

/s/ Victoria A. Roberts

Victoria A. Roberts

United States District Judge

|  |  |
|---|---|
| Source: | **Legal > / . . . / > MI Federal District Courts** ⓘ |
| More Like: | **HN8 - While the Fed. R. Civ. P. 12(b)(6) standard does not require that the plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim.** Khalik v. United Air Lines, 2012 U.S. App. LEXIS 2375 (10th Cir. February 6, 2012, Filed ) |
| Mandatory Terms: | **date from 02/24/2007** |
| View: | Full |
| Date/Time: | Friday, February 24, 2012 - 12:50 PM EST |

\* Signal Legend:
- ● - Warning: Negative treatment is indicated
- Ⓠ - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

In          About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
            Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

*2009 U.S. Dist. LEXIS 20420, **

RONALD RIEVER, Plaintiff, v. SAIA MOTOR FREIGHT LINE, INC., Defendant.

Case Number 08-15033-BC

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

2009 U.S. Dist. LEXIS 20420

**March 13, 2009**, Decided
**March 13, 2009**, Filed

**CORE TERMS:** manual, termination, discipline, disclaimer, causes of action, age discrimination, at-will, just-cause, terminal, handbook, manager, employment contract, enforceable, terminated, employment relationships, disciplinary, terminate, guidelines, notice, reply, open door policy, discovery, legitimate expectation', contractual, harassment, supervisor, younger, policies contained, former employer, employee handbook

**COUNSEL:** **[*1]** For Ronald Riever, Plaintiff: Victor J. Mastromarco, Jr., LEAD ATTORNEY, The Mastromarco Firm, Saginaw, MI; Russell C. Babcock, The Mastromarco Firm, Saginaw, MI.

For Saia Motor Freight Line, Incorporated, Defendant: Christopher M. Trebilcock, Megan P. Norris, Miller, Canfield, (Detroit), Detroit, MI.

**JUDGES:** Honorable THOMAS L. LUDINGTON, United States District Judge.

**OPINION BY:** THOMAS L. LUDINGTON

**OPINION**

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT, DISMISSING PLAINTIFF'S BREACH OF EMPLOYMENT POLICIES AND PROCEDURES CLAIM WITH PREJUDICE, AND DENYING AS MOOT DEFENDANT'S MOTION TO STAY DISCOVERY**

Plaintiff Ronald Riever filed a complaint on October 30, 2008, alleging three **causes of action** against his former employer, Defendant Saia Motor Freight Line, Inc., including (1) age discrimination under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.; (2) retaliation under the Michigan ELCRA; and (3) breach of employment policies and procedures under Michigan common law. Defendant removed the case, based on diversity jurisdiction, to this Court on December 5, 2008.

Now before the Court is Defendant's motion to dismiss [Dkt. **[*2]** # 8], filed on January 16, 2009, in which Defendant seeks dismissal of Plaintiff's counts 1 and 3 under Federal Rule of Civil Procedure **12(b)(6)**. Plaintiff filed a response [Dkt. # 12] on February 5, 2009, and Defendant filed a reply [Dkt. # 13] on February 13, 2009. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently **set forth** in the

motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

Also before the Court is Defendant's motion to stay discovery [Dkt. # 14] filed on March 5, 2009. Defendant seeks to stay discovery pending resolution of its motion to dismiss. As the Court is now resolving Defendant's motion to dismiss, the Court will deny as moot Defendant's motion to stay discovery.

I

The following facts are taken from Plaintiff's complaint:

Beginning on October 4, 1999, Plaintiff worked as a terminal manager at a facility located in Saginaw County. As a terminal manager, Plaintiff became employed by Defendant when it purchased his employer, at an unidentified point in time.  **[*3]** Ultimately, Defendant terminated Plaintiff's employment on March 28, 2008. At that time, Plaintiff was fifty-one years old.

With respect to his age discrimination **cause of action**, Plaintiff alleges that after Defendant "inherited" him from his former employer, Defendant conducted a "campaign of harassment" against Plaintiff, which consisted of unwarranted threats to terminate his employment, until Defendant terminated his employment. Plaintiff alleges that Defendant's reason for terminating his employment, insubordination, was pretextual and that Defendant was motivated by age. Plaintiff alleges that Defendant systematically discriminated against employees based on age by targeting and discharging older terminal employees and replacing them with younger, less qualified employees.

With respect to his retaliation **cause of action**, Plaintiff alleges that one of Defendant's former employees, Melvin Conner, brought a baseless discrimination claim against Defendant. On March 21, 2008, Plaintiff alleges that he was interviewed by Defendant's lawyer concerning that employee's claims. Plaintiff alleges that Defendant terminated his employment because of this protected activity.

With respect to  **[*4]** his breach of employment policies and procedures **cause of action**, Plaintiff alleges that Defendant's policies required it to treat Plaintiff in a fair, courteous, and respectful manner. Plaintiff also alleges that Defendant has represented that its discipline of Plaintiff was authorized by, and taken pursuant to, its disciplinary policy. Plaintiff alleges that he was not treated in a fair, courteous, and respectful manner, and that he was not insubordinate as Defendant claims. Plaintiff alleges that he relied on Defendant's policies. Plaintiff attached several pages of Defendant's employee manual to his complaint, including portions of sections entitled, "open door policy," "company statement regarding unions," "harassment," "sexual harassment," "professional work conduct and discipline," and "job opportunity - transfer policy." *See* Compl. Ex 1, 2.

The only two sections of the employee manual that Plaintiff refers to in his complaint are the "open door policy" and the "professional work conduct and discipline" sections. The section entitled, "open door policy," provides, in full:

> Our goal at Saia is to provide the best service available to our customers. To provide this type of service  **[*5]** requires a positive attitude and a team effort on the part of all employees. We will promote an atmosphere of concern within our company, which fosters this caring attitude. If you have any questions, suggestions, or problems with your job, you are encouraged to discuss the matter with your immediate supervisor, terminal manager, or department head.

All supervisory and management personal are charged with the responsibility of listening and giving you a responsible reply. Quite simply, if there is a problem brought to our attention we will do our best to take corrective action. If we disagree, we will discuss the matter. There will be no retaliation on any matters brought to management whether we agree or disagree.

Furthermore, if an employee feels that he or she has not been listened to or has not received a responsible reply, then that employee is encouraged to contact the next level of Management or the Human Resources Department. No employee will be retaliated against for doing so. In all cases the employee will be heard and will receive a responsible reply.

Compl. Ex. 1.

The section entitled, "professional work conduct and discipline," provides, inter alia, a list of actions and failures **[*6]** to act on the part of the employee that can lead to discipline and termination of employment. The section also provides "general guidelines" to "corrective action steps" that the employer "may" take to address an employee's conduct. The section further provides:

In addressing performance issues, flexibility and individual judgment are often required. Corrective or disciplinary steps need not be taken in a particular order nor do any progressive steps need to occur prior to termination.

Compl. Ex. 2. Finally, the section states, "In some situations, the company, in its sole judgment, may decide that these general guidelines are inappropriate and proceed directly to termination." *Id.*

Additionally, Defendant attached the cover and first page of the employee manual to its motion to dismiss. The first page contains an "important disclaimer," which provides in full:

I understand and agree that neither this Employee Manual nor any other written or oral statements by the Company or its representatives are a contract of employment, either by intent or implication. I understand and agree that no supervisor, manager, or other representative of the Company, other than the President, and then only **[*7]** if in writing signed by him, has any authority to enter into any agreement with me for employment for any specified period of time, or to make any agreement with me contrary to the terms of this Certification, and no agreement has been made. Accordingly, employment with the Company is terminable at the will of either me or the Company at any time, without notice or any specific disciplinary procedures.

Dft's Mtn to Dismiss Ex. 2.

II

In considering a motion to dismiss brought under Rule **12(b)(6)**, "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Yet, to survive a Rule **12(b)(6)** motion, a plaintiff's complaint "must contain either direct or inferential allegations respecting all the material elements [of the claim] to sustain a recovery under some viable legal theory." *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007) (internal quotation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). *See also, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L.

Ed. 2d 929 (2007)  **[*8]** (explaining that a complaint must contain something more than a statement of facts that merely creates speculation or suspicion of a legally cognizable **cause of action**). "When a court is presented with a Rule **12(b)(6)** motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

III

Defendant contends that counts 1 and 3 of Plaintiff's complaint should be dismissed under Rule **12(b)(6)**. Defendant contends that count 1 should be dismissed because Plaintiff has not plead the facts necessary to support his claim of age discrimination and merely makes conclusory statements regarding a **prima facie case** of age discrimination under the ELCRA. Defendant contends that count 3 should be dismissed because Michigan law does not provide a **cause of action** for breach of an employment policy or procedure when the employee manual specifically disclaims the formation of an employment contract based  **[*9]** on the policies contained therein.

A

First, with respect to count 1, Plaintiff's age discrimination claim under the ELCRA, Plaintiff has not plead facts that would entitle him to relief. With the exception of identifying himself and his employer, his dates of employment, his age when his employment was terminated, the allegation that Defendant conducted a "campaign of harassment," and the allegation that Defendant claims it terminated Plaintiff's employment based on his insubordination, Plaintiff has not alleged any factual support for his claim. Rather, the majority of Plaintiff's statements in the complaint are conclusory statements stating the prima facie elements of his age discrimination claim without factual support.

Plaintiff contends that he has alleged the following facts in support of his age discrimination claim:

. Plaintiff was employed by Defendant as a terminal manager at its facility located in Saginaw County.

. Plaintiff was hired on October 4, 1999, as a terminal manager and continuously held that position until his wrongful termination which occurred on March 28, 2008.

. Defendant inherited Plaintiff when it purchased Plaintiff's former employer and Defendant conduct a  **[*10]** campaign of harassing the Plaintiff along with unwarranted threats of termination up to the date of Plaintiff's wrongful termination.

. Plaintiff was fifty-one years old at the time of discharge.

. Plaintiff was terminated for reasons that were wholly pretextual in nature and in breach of its policies and procedures.

. Defendant was motivated by Plaintiff's age when the decision was made to terminate his employment.

. Defendant has systematically targeted and discharged older terminal managers for pretextual reasons and replacing those individuals with younger, less qualified

individuals.

. Plaintiff was replaced by a younger, less qualified person.

As Defendant's motion and reply emphasize, Plaintiff has not alleged any facts showing that he was singled out because of his age, Plaintiff makes no specific reference to age-based conduct or comments, and Plaintiff does not identify even one younger individual who was treated more favorably by Defendant. Based on the above, the Court will grant Defendant's motion to dismiss Plaintiff's age discrimination claim under the ELCRA. However, rather than dismiss Plaintiff's claim outright, the Court will grant Plaintiff leave to file an amended complaint **[\*11]** that meets the requirements **set forth** in *Twombly*. Should Plaintiff fail to do so, the Court will dismiss Plaintiff's claim with prejudice.

B

Second, Defendant contends that Plaintiff's count III, breach of employment policies and procedures, should be dismissed because Michigan law does not support such a **cause of action** where the plaintiff is an at-will employee and the employer specifically states in its employee manual that the policies **set forth** therein do not create an employment contract. Defendant also contends that any amendment of this claim would be futile. In response, Plaintiff contends that, regardless of whether his employment is at will or for cause, he can maintain a **cause of action** for breach of an employment policy because Defendant has created an enforceable right because of representations made in its employee manual. Plaintiff indicates that he does not concede that his employment was not for cause, but he does not argue that point in his response to Defendant's motion to dismiss.

Under Michigan law, there is a presumption that employment relationships are terminable at will. *Sahadi v. Per-Se Techs., Inc.*, 280 F. Supp. 2d 689, 701 (E.D. Mich. 2003) (citing *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315 (Mich. 1937)). **[\*12]** Contractual obligations or limitations are only imposed on an employer's right to terminate employment when that presumption is rebutted. *Id.* (citing *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880 (Mich. 1980)). The presumption may be overcome "with proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Id.* (citing *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 507 N.W.2d 591 (Mich. 1993)).

A contract provision may be implied "where an employer's policies and procedures instill a 'legitimate expectation' of job security in the employee." *Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, 911 (Mich. 1998) (citing *Toussaint*, 292 N.W.2d at 885). [1] Michigan courts "have recognized a two-step inquiry to evaluate legitimate-expectations claims." *Id.* First, it must be determined "what, if anything, the employer has promised." *Id.* (internal quotation omitted). Second, it must be determined "whether that promise is reasonably capable of instilling a legitimate expectation of just-cause employment." *Id.* (internal quotation omitted).

### FOOTNOTES

[1] Courts have recognized two other ways by which a plaintiff can prove a contractual terms, including through (1) "proof **[\*13]** of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause," and (2) "an express agreement, either written or oral, regarding job security that is clear and unequivocal." *Lytle*, 579 N.W.2d at 911 (internal citations omitted). These two ways of proving a contractual term are not at issue in this case.

Defendant contends that an employee does not have a legitimate expectation of just-cause employment based on an employee handbook when the handbook states that it does not create a contract or change the at-will employment relationship, citing *Sahadi*, 280 F. Supp. 2d at 701, and *Cluley v. Lansing Bd. of Water and Light*, No. 264208, 2006 Mich. App. LEXIS 607, 2006 WL 551351 (Mich. Ct. App. Mar. 7, 2006). In *Cluley*, the plaintiff asserted that he had a reasonable expectation of just cause employment in part because his employer had an anti-discrimination policy. 2006 Mich. App. LEXIS 607, 2006 WL 551351, at *8. The court of appeals rejected this evidence, stating that "the policy is not reasonably capable of being interpreted as a promise of just-cause employment." *Id*. Rather, the court determined that the employer retained an at-will employment relationship when it included a notice at **[*14]** the front of its employee manual advising all employees that the policies contained in the manual did not create a contract of employment. 2006 Mich. App. LEXIS 607, [WL] at *7. **2**

### FOOTNOTES

**2** The notice included in the employee manual stated:

This manual neither implies nor establishes a contract between Lansing Board of Water and Light ("BWL") and the employee. The contents of this Employee Policies and Benefits Reference Handbook summarize current BWL policies, procedures and programs and are intended as guidelines only. Actual policies, procedures and programs can be obtained from Human Resources or viewed on the BWL Intranet Website in the Human Resources section.

The BWL retains the right to change, modify, suspend, interpret or cancel in whole or in part any of the published or unpublished personnel policies or practices of the BWL, without advance notice, in its sole discretion, without having to give cause or justification to any employee. Recognition of these rights and prerogatives is a term and condition of employment and continued employment. As such, the contents of this handbook do not constitute the terms of an employment contract and the BWL is not required to employ you for any set period of time. Any written **[*15]** or oral statement to the contrary by a Supervisor, Manager, Director or other agent of the BWL is unauthorized and should not be relied upon by any prospective or existing employee.

*Id*.

In response, Plaintiff emphasizes that "at-will" and "just-cause" employment are at opposite ends of a spectrum and are not the only types of employment relationships possible under Michigan law, citing *Thomas v. John Deere Corp.*, 205 Mich. App. 91, 517 N.W.2d 265 (Mich. Ct. App. 1994). In *Thomas*, the court explained:

In some employment contracts, employers choose to retain unfettered discretion to terminate an employee's employment when doing so would not violate the law. In other employment contracts, employers agree to limit their discretion to terminate an employee's employment in some way. Employers and employees are free to bind themselves as they wish, and "at-will" and "just-cause" termination provisions are merely extremes that lie on opposite ends of the continuum of possibilities.

*Id*. at 267. Additionally, Plaintiff contends that in the case *In re Certified Question*, 432 Mich. 438, 443 N.W.2d 112 (Mich. 1989), the Michigan Supreme Court "clearly envisioned that employers may be bound by policies beyond those dealing with 'discharge-for-cause'

**[*16]** employment policies." Plaintiff emphasizes that the court stated that "an employer who chooses to establish desirable personnel policies, *such as* a discharge-for-cause employment policy," *id* at 454 (emphasis added), benefits from such policies and creates a situation "instinct with obligation." *Id*. (quoting *Toussaint*, 292 N.W.2d at 892). The court also stated that it is not true that "anything less than a permanent job commitment is without meaning or value." *Id*. at 455.

As an example of such a policy, Plaintiff points out that in *Damrow v. Thumb Cooperative Terminal, Inc.*, 126 Mich. App. 354, 337 N.W.2d 338, 340 (Mich Ct. App. 1983), the court found that the employer was bound to follow its policy of not discharging an employee without a "final warning." The employee manual contained a provision that stated, "No employee will be discharged without prior *final warning*, except for cases involving dishonesty, gross insubordination and other such serious offenses as defined in the Terminal work rules section of this manual." *Id*. (emphasis in original) The court found that "the evidence established conclusively that the manual set out the company's obligations vis-a-vis its employees and that it was defendant's **[*17]** intention to follow the manual procedures." *Id*. at 342. There was no apparent disclaimer included in the manual. Based on these cases, Plaintiff contends that Defendant has created, through its policies, what can be described as an "enhanced" employment relationship, which binds Defendant to follow certain policies that it announced in its manual.

In addition to *Thomas* and *In re Certified Question*, Plaintiff relies on *Daimlerchrysler v. Carson*, No. 237315, 2003 Mich. App. LEXIS 576, 2003 WL 888043 (Mich. Ct. App. Mar. 6, 2003), *Sobek v. St. Mary's Medical Center*, No. 00-34048-NZ-1 (Mich. Cir. Ct. May 28, 2003), and *Hock v. St. Mary's Medical Center*, No. 00-34053-NZ-3 (Mich. Cir. Ct. May 7, 2003). In *Carson*, the court upheld the arbitrator's determination that the employer had limited its ability to discharge the plaintiff without first conducting "a fair and thorough investigation" when the employer had stated at a meeting that it would conduct such an investigation in response to complaints about employees. 2003 Mich. App. LEXIS 576, 2003 WL 888043, at *1-2. The court found that, under a legitimate-expectations theory, reasonable minds could differ as to whether there was a promise. 2003 Mich. App. LEXIS 576, [WL] at *3. The court also found that reasonable minds **[*18]** could differ as to whether the promise was "reasonably capable of instilling a legitimate expectation of a 'fair and thorough investigation in response to [] complaints." *Id*.

In *Sobek* and *Hock*, which both addressed the "Associate Handbook" and "Human Resources Policy" of St. Mary's Medical Center, the courts found that neither the handbook, which included an express disclaimer, nor the written policy, created a promise of just-cause employment under the legitimate-expectations analysis. *Sobek*, No. 00-34048-NZ-1, slip op. at 6; *Hock*, No. 00-34053-NZ-3, slip op. at 10-11. Despite these findings, both courts found that St. Mary's had an obligation to follow the procedures **set forth** in the Human Resources Policy prior to terminating the plaintiffs' employment. *Sobek*, No. 00-34048-NZ-1, slip op. at 6; *Hock*, No. 00-34053-NZ-3, slip op. at 12. The courts emphasized that "while an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced." *Sobek*, No. 00-34048-NZ-1, slip op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 12 (both citing *Toussaint*, 292 N.W.2d at 892). **[*19]** The courts found that St. Mary's, "in its decision to draft and implement the Human Resources Policy - announced to its employees its intention to grant them certain 'rights' prior to termination, provided that the circumstances surrounding their termination triggered the policy." *Sobek*, No. 00-34048-NZ-1, slip op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 12. Thus, St. Mary's "partially limited its authority to terminate [the plaintiffs'] otherwise at-will employment." *Sobek*, No. 00-34048-NZ-1, slip op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 12. Notably, the courts stated that St. Mary's had failed to present any evidence to suggest that its adherence to the Human Resources Policy was discretionary. *Sobek*, No. 00-34048-NZ-1, slip

op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 13.

Defendant contends that the cases relied upon by Plaintiff should not persuade the Court in this case. With respect to *Carson*, Defendant emphasizes that the case did not involve an employee manual with an express disclaimer. Rather, the *Carson* court enforced the employer's oral promise to conduct a "fair and thorough investigation" of complaints against employees. Indeed, the factual allegations in *Carson* **[*20]** are significantly different from those in this case such that *Carson* is not persuasive. Similarly, the *In re Certified Question* court did not address an employee manual with an express disclaimer.

With respect to *Sobek* and *Hock*, Defendant emphasizes that they are circuit court decisions and cites three court of appeals cases in which the court found that the St. Mary's associate handbook did not create enforceable rights because it contained an express disclaimer stating that it did not create an employment contract. *See David v. St. Mary's Med. Ctr.*, No. 231007, 2002 WL 1897945, at *2 (Mich. Ct. App. Aug. 16, 2002); *Lier v. St. Mary's Med. Ctr.*, No. 259596, 2006 Mich. App. LEXIS 2766, 2006 WL 2708590, at *4 (Mich. Ct. App. Sept. 21, 2006); *Linzy v. St. Mary's Med. Ctr.*, No. 228627, 2002 Mich. App. LEXIS 810, 2002 WL 1275549, at *3 (Mich. Ct. App. June 4, 2002). Notably, these three cases are not inconsistent with *Sobek* and *Hock* because they did not consider the Human Resources Policy present in *Sobek* and *Hock*, which is where those two courts found the employer created enforceable rights.

Nevertheless, the plaintiffs' claims in *Sobek* and *Hock* are distinguishable from Plaintiff's claims in this case. Plaintiff's complaint alleges that Defendant's **[*21]** employee manual is the source of the policies that Defendant has allegedly breached. At issue is the Defendant's "open door policy," which Plaintiff appears to allege obligated Defendant to treat him in a fair, courteous, and respectful manner. The open door policy appears to generally advocate "an atmosphere of concern," a "caring attitude," and charges supervisors and mangers with listening and responsibly replying to employee concerns. Also at issue is the "professional work conduct and discipline" policy, which Plaintiff appears to allege obligated Defendant to mete out discipline, including termination, in a particular manner.

Significantly, a general disclaimer is included at the front of the manual, which states, inter alia, "I understand and agree that neither this Employee Manual nor any other written or oral statements by the Company or its representatives are a contract of employment, either by intent or implication." The disclaimer further provides that "employment with the Company is terminable at the will of either me or the Company at any time, without notice or any specific disciplinary procedures." In further regard to discipline, the manual states in the "professional **[*22]** work conduct and discipline" section, that "[c]orrective or disciplinary steps need not be taken in a particular order nor do any progressive steps need to occur prior to termination." The section further provides, "In some situations, the company, in its sole judgment, may decide that these general guidelines are inappropriate and proceed directly to termination."

Unlike *Sobek* and *Hock*, in which the plaintiffs relied on the associate handbook and the official Human Resources Policy, here, Plaintiff has not alleged a source of policy that could bind Defendant other than the employee manual. In this way, Plaintiff's allegations suggest that the analysis of *David, Lier*, and *Linzy*, is more applicable than the analysis of *Sobek* and *Hock*, because in the former cases, the courts addressed an employee handbook with a disclaimer as the sole source of an allegedly enforceable policy.

Perhaps an even more important difference from *Sobek* and *Hock* is that here, Defendant's manual states that its policies are discretionary. The general disclaimer included at the front of the employee manual, which addresses both the manual as a whole and the guidelines for discipline, and the specific disclaimer **[*23]** in the discipline section, indicate that Defendant

has not modified Plaintiff's at-will employment status, and has maintained discretion to discipline employees using "flexibility and individual judgment." *See also Martinez v. Gen. Motors Corp.*, Nos. 266112, 267218, 2007 Mich. App. LEXIS 1279, 2007 WL 1429632, at \*6 (Mich. Ct. App. May 15, 2007) (finding that the defendant's "open door policy" contained in the employee handbook did not provide the plaintiff with an enforceable right to be treated "fairly" and "honestly" and that the at-will employee did not have a "legitimate expectation that he would not be terminated without some degree of due-process-like protection"); *Muse v. Lansing Hous. Comm'n*, No. 241807, 2004 Mich. App. LEXIS 34, 2004 WL 60299, at \*1 (Mich. Ct. App. Jan. 13, 2004) (finding that the defendant's handbook and "work rules" did not create any enforceable rights when the rules did not state that "a disciplinary progression is mandatory for every offense" and emphasizing that "[m]erely creating guidelines for a systematic way of dealing with employees' misconduct does not establish just-cause employment rather than at-will employment"); *Tabor v. Elec. Data Sys., Inc.*, No. 03-70243, 2005 U.S. Dist. LEXIS 35108, 2005 WL 1030418, at \*8, \*8 n.3 (E.D. Mich. Apr. 27, 2005) **[\*24]** (noting that "*Toussaint* has been limited to just cause employment contracts" and that other types of policies are not enforceable under Michigan law).

While the cases cited by both parties may not entirely preclude the possibility that a **cause of action** exists for a breach of a policy or procedure other than a policy establishing just-cause employment, the cases do not suggest that such a **cause of action** exists in a situation where the facts alleged by Plaintiff are true. In this case, Defendant expressly stated in the employee manual that its written policies included in the manual do not create a contract and the policies explicitly reserved discretion to Defendant in applying the policies. Thus, the Court will grant Defendant's motion to dismiss Plaintiff's breach of policies and procedures claim. Additionally, Plaintiff has not indicated that any other facts exist that would demonstrate that amendment of the complaint would not be futile. Thus, the Court will not grant Plaintiff leave to amend the complaint with respect to his breach of employment policies and procedures claim.

IV

Accordingly, it is **ORDERED** that Defendant's motion to dismiss [Dkt. # 8] is **GRANTED**.

It is further **ORDERED  [\*25]** that Plaintiff is **GRANTED LEAVE** to file an amended complaint, which shall amend his age discrimination claim under the ELCRA such that it alleges facts sufficient under *Twombly*. Plaintiff shall file the amended complaint on or before **March 25, 2009**, or suffer dismissal of his claim with prejudice.

It is further **ORDERED** that Plaintiff's claim for breach of employment policies or procedures is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Defendant's motion to stay discovery [Dkt. # 14] is *DENIED AS MOOT*.

/s/ Thomas L. Ludington

THOMAS L. LUDINGTON

United States District Judge

Dated: March 13, 2009

Source: **Legal** > / . . . / > **MI Federal District Courts**  i

More Like: HN8 - **While the Fed. R. Civ. P. 12(b)(6) standard does not require that the plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim.** Khalik v. United Air Lines, 2012 U.S. App. LEXIS 2375 (10th Cir. February 6, 2012, Filed )

Mandatory Terms: **date from 02/24/2007**

View: Full

Date/Time: Friday, February 24, 2012 - 3:46 PM EST

In

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

*2012 U.S. App. LEXIS 2375, \**

FEDWA KHALIK, Plaintiff-Appellant, v. UNITED AIR LINES, Defendant-Appellee.

No. 11-1063

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

2012 U.S. App. LEXIS 2375

February 6, 2012, Filed

**PRIOR HISTORY:** [*1]
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO.
(D.C. No. 10-CV-01490-DME-MJW).
Khalik v. United Air Lines, 2010 U.S. Dist. LEXIS 129598 (D. Colo., Dec. 7, 2010)

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant former employer, alleging retaliation and discrimination because of race, religion, national origin, and ethnic heritage under Title VII of the Civil Rights Act of 1964, and retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq. The United States District Court for the District of Colorado granted the employer's motion to dismiss. The employee appealed.

**OVERVIEW:** The employee, an Arab-American who was born in Kuwait and practiced Islam, was terminated after she allegedly was grabbed by the arm in the office, was subjected to a false investigation, complained about discrimination, and complained about a coworker's email discussing a possible sexual liaison with an underage girl. The appellate court determined that the employee's claims were not plausible under the Twombly/Iqbal standard because (1) several of her allegations were not entitled to the assumption of truth because they were entirely conclusory, and (2) the remaining facts did not sufficiently allege discrimination or retaliation since her claims were based solely on the fact that she was Muslim and Arab-American, that she complained about discrimination, that she complained about the denial of FMLA leave, and that the employer terminated her.

**OUTCOME:** The appellate court affirmed.

**CORE TERMS:** retaliation, termination, religion, national origin, prima facie case, conclusory, heritage, ethnic, plausibility, new standard, cause of action, quotation marks, terminated, wrongful termination, protected class, internally, recitation, heightened, materially, formulaic, grabbed, survive, amend, arm, state law, state law claims, criminal act, failure to state a claim, breach of contract, promissory estoppel

## LEXISNEXIS(R) HEADNOTES
Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > General Overview
*HN1* "Ethnic heritage" is not a protected class under Title VII of the Civil Rights Act of

1964. 42 U.S.C.S. § 2000e-2(a)(1).

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
Civil Procedure > Appeals > Standards of Review > De Novo Review
**HN2** An appellate court reviews a district court's dismissal under Fed. R. Civ. P. 12(b)(6) de novo.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
**HN3** Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Recently, the Supreme Court has clarified this pleading standard: to withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face. A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
**HN4** The Supreme Court has explained two principles underlying the new standard: (1) when legal conclusions are involved in the complaint the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to those conclusions, and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. Thus, mere "labels and conclusions" and a formulaic recitation of the elements of a cause of action will not suffice. Accordingly, in examining a complaint under Fed. R. Civ. P. 12(b)(6), a court will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
**HN5** Regarding the Twombly/Iqbal standard, there is disagreement as to whether this new standard requires minimal change or whether it in fact requires a significantly heightened fact-pleading standard. The plausibility standard has been criticized by some as placing an improper burden on plaintiffs, where a chief criticism is that plaintiffs will need discovery before they can satisfy plausibility requirements when there is asymmetry of information, with the defendants having all the evidence.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
**HN6** Regarding the Twombly/Iqbal standard, the court has recently stated this new standard is a "refined standard." In applying this new, refined standard, the court has held that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. Further, the nature and specificity of the allegations required to state a plausible claim will vary based on context. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Thus, the Twombly/Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more

than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Supreme Court has stated will not do.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements

HN7 In other words, Fed. R. Civ. P. 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era. And in fact, the Supreme Court has stated in a pre-Twombly case that a requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. Thus, under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. Twombly and Iqbal do not require that the complaint include all facts necessary to carry the plaintiff's burden.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims

HN8 While the Fed. R. Civ. P. 12(b)(6) standard does not require that the plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim.

Labor & Employment Law > Discrimination > National Origin Discrimination > Federal & State Interrelationships
Labor & Employment Law > Discrimination > Racial Discrimination > Federal & State Interrelationships
Labor & Employment Law > Discrimination > Religious Discrimination > Federal & State Interrelationships
Labor & Employment Law > Discrimination > Retaliation > General Overview

HN9 A court evaluates a plaintiff's claims for discrimination and retaliation identically under federal and state law. Colorado and federal law apply the same standards to discrimination claims, and so they rise or fall together.

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > General Overview

HN10 Title VII of the Civil Rights Act of 1964 makes it unlawful to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

Labor & Employment Law > Discrimination > National Origin Discrimination > Proof > Burden Shifting
Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Burden Shifting
Labor & Employment Law > Discrimination > Religious Discrimination > Burdens of Proof > Burden Shifting

HN11 A plaintiff proves a violation of Title VII of the Civil Rights Act of 1964 either by direct evidence of discrimination or by following the McDonnell Douglas burden-shifting framework. Under McDonnell Douglas, a three-step analysis requires the plaintiff first prove a prima facie case of discrimination. To set forth a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a

protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. If the defendant does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext.

Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof
Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Title VII of the Civil Rights Act of 1964 > General Overview
HN12 Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to retaliate against an employee because she has opposed any practice made an unlawful employment practice by this subchapter. 42 U.S.C.S. § 2000e-3(a). A plaintiff can similarly establish retaliation either by directly showing that retaliation played a motivating part in the employment decision, or indirectly by relying on the three-part McDonnell Douglas framework.

Labor & Employment Law > Discrimination > Retaliation > Elements > General Overview
HN13 To state a prima facie case for retaliation under Title VII of the Civil Rights Act of 1964, a plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.

Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof
Labor & Employment Law > Discrimination > Retaliation > Elements > General Overview
Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Family & Medical Leave Act
HN14 The Family and Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., makes it unlawful for an employer to retaliate against an employee for exercising her rights to FMLA leave. 29 U.S.C.S. § 2615(a). Retaliation claims under the FMLA are subject to the burden-shifting analysis of McDonnell Douglas. And, to establish a prima facie case of retaliation under the FMLA, a plaintiff must show (1) she engaged in protected activity, (2) the employer took a materially adverse action, and (3) there is a causal connection between the two.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
HN15 Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
HN16 In the context of Fed. R. Civ. P. 12(b)(6), while specific facts are not necessary, some facts are.

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
HN17 The Twombly/Iqbal standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face.

**COUNSEL:** John R. Olsen of Olsen & Brown, LLC, Niwot, Colorado, for Appellant.

Judith A. Biggs of Holland & Hart LLP, Boulder, Colorado (Emily Hobbs-Wright and Steven T. Collis of Holland & Hart LLP, Denver, Colorado, with her on the brief), for Appellee.

**JUDGES:** Before BRISCOE, Chief Judge, McKAY, and O'BRIEN, Circuit Judges.

**OPINION BY:** McKAY

### OPINION

**McKAY**, Circuit Judge.

This is an employment-discrimination case the district court dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff Fedwa Khalik appeals the dismissal, and we affirm.

Plaintiff is an Arab-American, born in Kuwait, who practices Islam. Defendant United Air Lines hired her in 1995, and she rose to the position of Business Services Representative before Defendant terminated her position in 2009. Plaintiff's complaint asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, for retaliation and discrimination because of race, religion, national origin, and ethnic heritage.[1] Plaintiff's complaint also brings a retaliation claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. **[*2]** Plaintiff also alleged state law claims for discrimination, retaliation, breach of contract, promissory estoppel, and wrongful termination in violation of Colorado public policy.

### FOOTNOTES

[1] As the district court noted, Plaintiff's claim for relief based on "ethnic heritage" discrimination necessarily fails because *HN1* "ethnic heritage" is not a protected class under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1).

Since this case turns on the sufficiency of the facts set forth in the complaint, we will now set forth those alleged facts. Plaintiff "was born in Kuwait and is an Arab-American. Both of her parents are Palestinian." (Appellant's App. at 7.) "Plaintiff's religion is Islam." (*Id.* at 8.) Defendant first employed Plaintiff in 1995, and "[s]he performed her job well at all times." (*Id.*) "She rose to the job title of Business Services Representative." (*Id.*) "She was physically assaulted in the office (grabbed by the arm) after being subjected to a false investigation and false criticism of her work. She was targeted because of her race, religion, national origin, and ethnic heritage." (*Id.*) "Plaintiff complained internally about both discrimination at United Air Lines and being denied FMLA leave." (*Id.*) **[*3]** "She complained about an email sent by a United Air Lines employee discussing a possible sexual liaison with an underage girl (which constituted a threat of criminal violation endangering the public)." (*Id.*) Defendant's "reasons given for plaintiff's termination and other mistreatment as described herein were exaggerated and false, giving rise to a presumption of discrimination, retaliation and wrongful termination." (*Id.* at 9.)

More than two months after Defendant filed its motion to dismiss and three weeks after the deadline to amend pleadings had passed, Plaintiff sought to amend her complaint by adding the following sentence: "The above-stated actions against plaintiff were taken because of plaintiff's race, religion, national origin, ethnic heritage and in retaliation for reporting

discrimination, seeking an FMLA leave, and reporting a criminal act by a United Air Lines employee that endangered the public." (*Id*. at 89.) The district court denied Plaintiff's motion to amend as futile and untimely and granted Defendant's motion to dismiss the federal claims for failure to state a claim. The district court also exercised pendent jurisdiction and dismissed the state law discrimination **[*4]** and retaliation claims as similarly not plausible. Plaintiff confessed Defendant's motion to dismiss the breach of contract and promissory estoppel claims, and therefore the district court exercised pendent jurisdiction and dismissed them with prejudice. The district court declined to exercise jurisdiction over Plaintiff's remaining claim for violation of Colorado public policy, and therefore dismissed it without prejudice for lack of subject matter jurisdiction. This appeal followed. On appeal, Plaintiff challenges only the Rule 12(b)(6) dismissal of her discrimination, retaliation, and FMLA claims.

## DISCUSSION

*HN2* We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). *HN3* Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Recently, the Supreme Court clarified this pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009): to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations **[*5]** of fact, taken as true, "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Id*.

*HN4* The Court explained two principles underlying the new standard: (1) when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions," *Iqbal*, 129 S. Ct. at 1949, and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," *id*. at 1950. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Accordingly, in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.

*HN5* There is disagreement as to whether this new standard requires minimal change or whether it in fact requires a significantly heightened fact-pleading standard.[2] *Compare In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009) **[*6]** (construing *Twombly* as requiring a plaintiff to plead enough specific facts "to raise a reasonable expectation that discovery will reveal evidence"), *with id*. at 912 (Merritt, J., dissenting) (stating that the majority has "seriously misapplied the new standard by requiring not simple 'plausibility,' but by requiring the plaintiff to present at the pleading stage a strong probability of winning the case"), *and Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (stating that *Twombly* "did not . . . supplant the basic notice-pleading standard"). We noted in *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010), that "the plausibility standard has been criticized by some as placing an improper burden on plaintiffs," where a chief criticism "is that plaintiffs will need discovery before they can satisfy plausibility requirements when there is asymmetry of information, with the defendants having all the evidence."

## FOOTNOTES

**2** This confusion is not helped by the fact that the Supreme Court decided *Iqbal* over the dissent of Justice Souter, who authored the majority opinion in *Twombly*. Justice Souter described the *Iqbal* 5-4 majority opinion as "bespeak[ing] a fundamental misunderstanding of the **[*7]** enquiry that *Twombly* demands." *Iqbal*, 129 S. Ct. at 1959 (Souter, J.

dissenting).

*HN6* We recently stated this new standard is a "refined standard." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In applying this new, refined standard, we have held that plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Further, we have noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn*, 656 F.3d at 1215; *see also Iqbal*, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Thus, we have concluded the *Twombly/Iqbal* standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no **[\*8]** more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Robbins*, 519 F.3d at 1247 (internal quotation marks and citations omitted).

*HN7* In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements. *See Iqbal*, 129 S. Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . ."). And in fact, the Supreme Court stated in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), a pre-*Twombly* case, that "[a] requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Id.* at 515 (internal quotation marks omitted). Thus, as the Court held in *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), which it decided a few weeks after *Twombly*, under Rule 8, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 93 (quoting *Twombly*, 550 U.S. at 555 (alteration **[\*9]** in original)); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

*HN8* While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim. *See Swierkiewicz*, 534 U.S. at 515; *see also* **Twombly**, 550 U.S. at 570. Thus, we start by discussing the elements a plaintiff must prove to establish a claim for discrimination and retaliation under **Title VII** and the FMLA.**3**

### FOOTNOTES

**3** The parties agree that *HN9* we evaluate Plaintiff's claims for discrimination and retaliation identically under federal and state law. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010) ("Colorado and federal law apply the same standards to discrimination claims, and so . . . they rise or fall together . . . ." (citation and internal quotation marks omitted)). Thus, any determination of Plaintiff's federal law claims will necessarily also determine her state law claims.

*HN10* Title VII makes it unlawful "to discharge any individual, or otherwise **[\*10]** to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1).  *HN11* A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). Under *McDonnell Douglas*, a three-step analysis requires the plaintiff first prove a prima facie case of discrimination. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). To set forth a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998). The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *See Garrett*, 305 F.3d at 1216.  **[*11]** If the defendant does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext. *Id*.

*HN12* Title VII also makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff can similarly establish retaliation either by directly showing that retaliation played a motivating part in the employment decision, or indirectly by relying on the three-part *McDonnell Douglas* framework. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987 (10th Cir. 2011). *HN13* To state a prima facie case for retaliation under Title VII, a plaintiff must show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id*. at 998 (internal quotation marks omitted) (alteration in original).

*HN14* The FMLA makes it unlawful for an employer to retaliate against an employee  **[*12]** for exercising her rights to FMLA leave. *See* 29 U.S.C. § 2615(a). Retaliation claims under the FMLA are also subject to the burden-shifting analysis of *McDonnell Douglas*. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). And again, to establish a prima facie case of retaliation under the FMLA, a plaintiff must show (1) she engaged in protected activity, (2) the employer took a materially adverse action, and (3) there is a causal connection between the two. *Id*. at 1171.

We now turn to whether Plaintiff's complaint sufficiently stated plausible claims for relief. As we stated earlier, while Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims. We agree with the district court that Plaintiff's allegations are the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal. See Iqbal*, 129 S. Ct. at 1949 (*HN15* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's general assertions of discrimination and retaliation, without any details whatsover of events leading up to her termination, are insufficient  **[*13]** to survive a motion to dismiss. *HN16* While "[s]pecific facts are not necessary," *see Erickson*, 551 U.S. at 93, some facts are.

Plaintiff's arguments, particularly as framed at oral argument, accuse the district court of having erroneously applied a heightened pleading standard. If true, this would be a troublesome development, especially because in employment discrimination cases where the employers are large corporations, the employee may not know who actually fired her or for what reason. But, *HN17* the *Twombly/Iqbal* standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face.

In this case, several of Plaintiff's allegations are not entitled to the assumption of truth because they are entirely conclusory, including her allegations that: (1) she was targeted

because of her race, religion, national origin and ethnic heritage; (2) she was subjected to a false investigation and false criticism; and (3) Defendant's stated reasons for the termination and other adverse employment actions were exaggerated and false, giving rise to a presumption of discrimination, retaliation, and wrongful termination. *Cf. Iqbal*, 129 S. Ct. at 1951 (holding **[*14]** that the respondent's allegation that the petitioners "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin" was conclusory and not entitled to the assumption of truth (internal quotation marks and brackets omitted)).

Striking those conclusory allegations leaves us with the following facts, which we take as true, *see id*. at 1949-50: (1) Plaintiff is an Arab-American who was born in Kuwait; (2) Plaintiff's religion is Islam; (3) Plaintiff performed her job well; (4) Plaintiff was grabbed by the arm in the office; (5) Plaintiff complained internally about discrimination; (6) Plaintiff also complained internally about being denied FMLA leave; (7) Plaintiff complained about an email that described a criminal act; and (8) Defendant terminated Plaintiff's employment position. These facts do not sufficiently allege discrimination or retaliation. There is no context for when Plaintiff complained, or to whom. There are no allegations of similarly situated employees who were treated differently. There are no facts relating to the alleged discrimination. There **[*15]** is no nexus between the person(s) to whom she complained and the person who fired her. Indeed, there is nothing other than sheer speculation to link the arm-grabbing and/or termination to a discriminatory or retaliatory motive. And finally, Plaintiff alleges nothing that would link her request for FMLA leave, which she provides no details about, to her termination.

While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement. For instance, Plaintiff should know when she requested FMLA leave and for what purpose. She should know who she requested leave from and who denied her. She should know generally when she complained about not receiving leave and when she was terminated. She should know details about how Defendant treated her compared to other non-Arabic or non-Muslim employees. She should know the reasons Defendant gave her for termination and why in her belief those reasons were pretextual. She should know who grabbed her by the arm, what the context for that action was, and when it occurred. She should know why she believed that action was connected **[*16]** with discriminatory animus. She should know who she complained to about the discrimination, when she complained, and what the response was. She should know who criticized her work, what that criticism was, and how she responded. But in fact, Plaintiff offers none of this detail. To be sure, we are not suggesting a court necessarily require each of the above facts. But a plaintiff must include some further detail for a claim to be plausible. Plaintiff's claims are based solely on the fact that she is Muslim and Arab-American, that she complained about discrimination, that she complained about the denial of FMLA leave, and that Defendant terminated her. Without more, her claims are not plausible under the *Twombly/Iqbal* standard.[4]

## FOOTNOTES

[4] Even before *Twombly/Iqbal*, cases that survived a motion to dismiss showed a higher level of detail. *See, e.g., Swierkiewicz*, 534 U.S. at 514 (holding a complaint sufficiently pled where the plaintiff "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination")*; Mahon v. Am. Airlines, Inc.*, 71 F. App'x 32, 35 (10th Cir. 2003) (holding **[*17]** that a complaint sufficiently stated an equal protection claim where it specifically identified disparate treatment compared to other similarly situated workers); *Duran v. Ashcroft*, 114 F. App'x 368, 370 (10th Cir. 2004) (holding a complaint sufficient

to state a claim where the plaintiff included relevant dates and specific instances of discrimination).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal.

| | |
|---|---|
| Source: | **Legal > / . . . / > US Supreme Court & Courts of Appeals Cases, Combined** i |
| Terms: | **Twombly w/p "Title VII"**   (Suggest Terms for My Search) |
| View: | Full |
| Date/Time: | Wednesday, February 22, 2012 - 11:08 PM EST |

\* Signal Legend:

● - Warning: Negative treatment is indicated

Q - Questioned: Validity questioned by citing refs

△ - Caution: Possible negative treatment

◆ - Positive treatment is indicated

A - Citing Refs. With Analysis Available

i - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

In

About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

*2011 U.S. Dist. LEXIS 99122, **

DOUGLAS ORTIZ, Plaintiff, - against - STANDARD & POOR'S, MARTHA DIESSLIN. Defendants.

10 Civ. 8490 (NRB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2011 U.S. Dist. LEXIS 99122

August 26, 2011, Decided
August 29, 2011, Filed

**PRIOR HISTORY:** Ortiz v. Std. & Poor's, 2010 U.S. Dist. LEXIS 119420 (D.N.J., Nov. 10, 2010)

**CORE TERMS:** disability, hostile work environment, prima facie case, harassment, discrimination claims, discriminatory, terminated, workplace, survive, medical condition, supervisor, subjected, facially, wrongful termination, fair notice, accommodate, abandoned, entirety, hostile, younger, severe, discrimination cases, intentional infliction of emotional distress, employment discrimination, years old, quotations marks, protected class, accommodation, termination, instability

**COUNSEL:** **[*1]** For Douglas Ortiz, Plaintiff: Evan L. Goldman, LEAD ATTORNEY, SCHIFFMAN, ABRAHAM, KAUFMAN & RITTER, P.C., HACKENSACK, NJ.

For Standard & Poor's, Martha Diessilin, Defendants: Robert Stephen Schwartz, LEAD ATTORNEY, Proskauer Rose LLP (Newark), Newark, NJ.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** NAOMI REICE BUCHWALD

**OPINION**

**MEMORANDUM AND ORDER**

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Douglas Ortiz ("Ortiz" or "plaintiff") brings this action against his former employer Standard & Poor's Financial Services LLC ("S&P") and his former supervisor Martha Diessilin [1] ("Diessilin" or "S&P Supervisor," together with S&P, "defendants"), asserting six counts of age and disability discrimination and related claims pursuant to New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 291, et seq. (Counts I and II); New York City Human Rights Law ("NYCHRL"), NYC Admin. C. § 8-101, et seq. (Count III); and the common law (Counts IV, V, and VI for hostile work environment, wrongful discharge, and intentional infliction of emotional distress ("IIED"), respectively).

**FOOTNOTES**

1 Defendants note that the proper spelling of this defendant's surname is "Diesslin." Because we, for the reasons stated **[\*2]** below, grant defendants' motion to dismiss in its entirety, there is no need to amend the caption. In addition, defendants note that the proper name of S&P is "Standard & Poor's Financial Services, LLC", not "Standard & Poor's."

Defendants now move to dismiss the Amended Complaint ("Am. Compl.") with prejudice under Federal Rule of Civil Procedure 12(b)(6), on the grounds that (1) plaintiff has not stated a plausible claim for relief for wrongful termination or failure to accommodate in violation of NYSHRL or NYCHRL based on either age or disability; (2) plaintiff has not stated a plausible claim for relief for intentional infliction of emotional distress ("IIED"); (3) plaintiff's claim of wrongful termination in violation of New Jersey public policy is preempted by New Jersey statute and inapplicable to his employment in New York; 2 and (4) plaintiff has not stated a plausible claim of hostile work environment. For the reasons set forth below, defendants' motion to dismiss is granted in its entirety.

**FOOTNOTES**

2 Because plaintiff does not respond to defendants' motion to dismiss Count V of the Amended Complaint — i.e., wrongful termination in violation of New Jersey public policy — we consider **[\*3]** this claim abandoned and do not address it herein. See e.g., Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd., No. 10 Civ. 2249 (LTS), 2011 U.S. Dist. LEXIS 14116, 2011 WL 666187, at \*7 (S.D.N.Y., Feb. 9, 2011)("Plaintiff's moving papers fail to respond to Defendants' motion to dismiss his claim for promissory estoppel. Accordingly, the Court considers Plaintiff to have abandoned this claim."); Robinson v. Fischer, No. 09 Civ. 8882 (LAK)(AJP), 2010 U.S. Dist. LEXIS 137660, 2010 WL 5376204, at \*10 (S.D.N.Y., Dec. 29, 2010) (stating that "[f]ederal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim" and listing cases); Lipton v. Cnty. of Orange, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (citing cases)).

**BACKGROUND**

**I. Factual Background**3

**FOOTNOTES**

3 The following facts are drawn from the Amended Complaint. We note that we include plaintiff's substantive allegations of workplace discrimination and harassment in their entirety. For purposes of reviewing **[\*4]** this motion to dismiss, all nonconclusory allegations are accepted as true. See S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 100 (2d Cir. 2009).

Plaintiff worked as a senior analyst for S&P from 1998 until December 9, 2009, 4 when his employment was terminated on the stated basis of a reduction in the workplace. Am. Compl.

¶¶ 1, 15. During the course of his employment, plaintiff "suffered from severe depression," although he contends that "his medical condition did not prevent him from performing his job duties up to [S&P's] expectations." Id. ¶¶ 3, 6. Nonetheless, plaintiff alleges that he was "chastised and ridiculed" at work when he made a request for accommodations from his employer, and that he was "subjected . . . to constant harassment and a hostile work environment." Id. ¶ 11.

### FOOTNOTES

4 Defendants assert that plaintiff was terminated on December 9, 2008, not 2009. Defs.' Mem. in Support of their Mot. to Dismiss ("Defs.' Mem.") at 1 n.2. Because this case was removed to federal court on November 12, 2009, we note that defendants are almost certainly correct. Nonetheless, we use plaintiff's specified date for consistency.

On or about March 2008, plaintiff spoke to his supervisor, **[\*5]** Diessilin, about "her [perceived] harassment over his [disability]" and she stated that "she wants 'the old Doug who laughs back.'" Id. ¶¶ 4, 5. Thereafter, Diessilin "called a meeting with [plaintiff's] co-workers to determine his 'threat factor'" and "expressed a concern about [plaintiff's] condition based upon 'what has been in the news,' [in presumptive reference] to violence at various college campuses throughout the country." Id. ¶¶ 7, 9. After the meeting, Diessilin "advised that she was left with no alternative 'but to report the concerns of the other employees about [plaintiff's] instability and concern for their well-being to Human Resources.'" Id. ¶ 8. In response, plaintiff "complained to [Diessilin] about the inappropriateness of disclosing his medical condition and the continual harassment associated with his medical condition." Id. ¶ 10. Plaintiff asserts that Diessilin "knowingly and willingly disclosed plaintiff's medical conditions to his co-workers (id. ¶ 14), and that he never displayed "any signs of instability in the workplace." Id. ¶ 13.

At the time of plaintiff's termination, he was fifty-nine years old. Id. ¶ 16.

### II. Procedural Background

Plaintiff commenced **[\*6]** this action in the Superior Court of the State of New Jersey on or about August 14, 2009. Defendants removed the action to the United States District Court for the District of New Jersey on November 12, 2009, on the basis of diversity jurisdiction.

Plaintiff filed his amended complaint on August 31, 2010. In response, on September 28, 2010, defendants moved to dismiss several counts and to transfer venue to this Court. By order dated November 10, 2010, the district court in New Jersey granted defendants' motion to transfer and, as a result, denied without prejudice their motion to dismiss. See Ortiz v. Standard & Poor's, No. 09 Civ. 5757 (DMC), 2010 U.S. Dist. LEXIS 119420, 2010 WL 4687879, at \*3 (D.N.J. Nov. 3, 2010) ("Because the Court believes that proper venue for this action lies in the Southern District of New York, and that New York law must be applied to the facts, this Court will not consider the valid and persuasive arguments raised by Defendants in their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), but will instead leave those issues to be resolved as the litigation proceeds in New York.").

### DISCUSSION

### I. Legal Standard for a Motion to Dismiss

When deciding a motion to dismiss for failure to state **[\*7]** a claim pursuant to Federal Rule 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint and

draw all reasonable inferences in plaintiff's favor. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint must include "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009).

In employment discrimination cases, a plaintiff is not required to establish a prima facie case at the pleadings stage. See **Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)** ("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). "Reconciling Swierkiewicz, Twombly, and Iqbal, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for **[*8]** the claim." Barbosa v. Continuum Health Partners Inc., 716 F.Supp.2d 210, 215 (S.D.N.Y. 2010) (quotations marks and citation omitted) (emphasis added).

## II. Analysis[5]

### FOOTNOTES

**5** As a preliminary matter, we note that plaintiff improperly attempts to support his claims by including in his opposition brief (Plaintiff's "Informal Opposition" by Letter to the Court dated January 28, 2011 ("Pl.'s Opp'n)) additional (uncorroborated) factual allegations that were not present in his Amended Complaint. For example, plaintiff states that he was replaced by a younger employee (Pl.'s Opp'n at 9); that defendants were aware that he had attempted to commit suicide and was receiving psychiatric treatment (id. at 7 n.l); and that he was subjected to greater hostility after filing an Equal Employment Opportunity Commission ("EEOC") complaint for hostile work environment (id. at 13). Even assuming, arguendo, that these new assertions were sufficient to support plaintiff's claims — which they are not — this Court may only consider the allegations in the Amended Complaint for purposes of this motion. See Reliance Ins. Co. v. Poly Vision Corp., 474 F.3d 54, 57 (2d Cir. 2007) (noting that it is "error" for a district **[*9]** court to consider allegations outside the complaint and its exhibits in resolving a 12(b)(6) motion). Moreover, we note that plaintiff had ample opportunity to incorporate these additional assertions in his Amended Complaint. Indeed, in a pre-motion telephone conference on December 12, 2010, plaintiff's counsel specifically represented to this Court — in response to this Court's inquiry about the possibility of plaintiff filing a second amended complaint — that there were no additional facts to add to those alleged in the Amended Complaint. The stated purpose of this Court's inquiry was to ascertain whether there were any additional allegations in order to avoid a situation in which the briefing of the motion to dismiss (and this Court's issuance of an opinion) was simply an academic exercise followed by plaintiff's filing of a second amended complaint with additional allegations.

### A. Age and Disability Discrimination Under NYSHRL and NYCHRL

"The standards for liability under [the NYSHRL and NYCHRL] are the same as those under the equivalent federal antidiscrimination laws." Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d Cir. 2006). See also Barbosa, 716 F.Supp.2d at 217 ("Employment discrimination **[*10]** claims brought under . . . the NYSHRL [] and the NYCHRL are generally analyzed under the same evidentiary framework that applies to Title VII and ADEA claims."); Pabon v. N.Y.C. Transit Auth., 703 F.Supp.2d 188, 198 (E.D.N.Y. 2010) (noting that disability-based discrimination

claims under the NYSHRL "rely upon an analytical framework that substantially mirrors" the federal Americans With Disabilities Act ("ADA") analysis). Thus, in order to make out a prima facie case of age discrimination in this action, plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered from an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Id. [6] "Although a plaintiff need not plead facts to establish a prima facie case of employment discrimination in order to survive a motion to dismiss, the court considers the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint which, if true, give the [d]efendant[s] fair notice of [p]laintiff['s] employment discrimination claims and the grounds on which such claims **[*11]** rests." Wolf v. Time Warner, Inc., 09 Civ 6549 (RJS), 2011 U.S. Dist. LEXIS 15866, 2011 WL 856264, at *4 (S.D.N.Y. Mar. 3, 2011) (internal quotation marks omitted).

**FOOTNOTES**

[6] Similarly, "[t]o establish a prima facie disability discrimination case under the ADA, a plaintiff must show (1) that his employer is subject to the ADA, (2) that he suffers from a disability within the meaning of the ADA, (3) that he was otherwise qualified to perform his job functions with or without reasonable accommodation, and (4) that he suffered an adverse employment action because of his disability." Pabon, 703 F.Supp.2d at 194. "In this Circuit, a disability-based discrimination claim under the NYSHRL and NYCHRL involve the 'same elements' as an ADA claim." Jernigan v. Dalton Management Co., LLC, 2011 U.S. Dist. LEXIS 83656, 2011 WL 3273514 (SAS), at *3 (S.D.N.Y. July 29, 2011) (citation omitted).

In Counts I, II, and III of his Amended Complaint, plaintiff contends that he was wrongfully terminated on the basis of his age and/or disability (specifically, depression) in violation of the NYSHRL and NYCHRL. [7] Plaintiff has failed to state a viable claim for relief under either statutory scheme because he does not plead sufficient facts to state a plausible claim that S&P **[*12]** took any adverse action against him because of either his age or disability. See, e.g., Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (stating that, in the context of a Title VII claim, "[i]t is axiomatic that mistreatment at work . . . is actionable . . . only when it occurs because of an employee's . . . protected characteristics.").

**FOOTNOTES**

[7] In his Amended Complaint, plaintiff states — without further detail — that he "made a request for accommodations and made Standard & Poor's aware of his medical condition, [but] it failed to make any efforts to accommodate his condition." Am. Compl. ¶ 11. However, plaintiff does not assert the elements of a failure to accommodate claim, or otherwise reference this allegation when setting forth his causes of action. As a result, to the extent that plaintiff asserts a failure to accommodate claim, it is dismissed.

To the limited extent that the Amended Complaint asserts discrimination, it does so only in a conclusory manner. [8] See, e.g., Am. Compl. ¶ 18 ("Standard & Poor's effectively terminated plaintiff's employment because of his age."); id. ¶ 21 ("Due to his age, plaintiff has been unlawfully discharged."); id. ¶ 24 ("Standard & Poor's has subjected **[*13]** plaintiff to unlawful discrimination on the basis of his medical condition . . . ."); id. ¶ 28 ("Due to his disability, plaintiff has been unlawfully discharged."). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. Iqbal, 129 S. Ct. at 1949.

**FOOTNOTES**

**8** Indeed, the sparseness of the Amended Complaint is underscored by the fact that plaintiff's opposition brief did not cite to any paragraph of the Amended Complaint in arguing against dismissal of his claims, with the exception of the following conclusory allegation: "Due to his disability, plaintiff has been unlawfully discharged." Am. Compl. ¶ 28. See generally Pl.'s Opp'n.

While plaintiff is correct that he need not establish a prima facie case of discrimination to survive a Rule 12(b)(6) motion, he "is required to set forth factual circumstances from which a discriminatory motivation can be inferred." Perry v. State of N.Y. Dep't of Labor, No. 08 Civ. 4610 (PKC), 2009 U.S. Dist. LEXIS 74006, 2009 WL 2575713, at *2 (S.D.N.Y. Aug. 20, 2009) (citing Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007)). Yet there is simply nothing in the Amended Complaint to suggest that the company-wide **[*14]** reduction in workforce ("RIF") was a "pretext" to obscure plaintiff's wrongful termination on the basis of age or disability. Am. Compl. ¶ 15.

For example, aside from a statement that plaintiff is fifty-nine years old, there is no reference to plaintiff's age in the Amended Complaint. The fact that plaintiff was (a) fifty-nine years old and (b) terminated, cannot, without more, constitute a plausible age discrimination claim. See, e.g., Zucker v. Five Towns Coll., No. 09 Civ. 4884 (JS) (AKT), 2010 U.S. Dist. LEXIS 85441, 2010 WL 3310698, at *2-3 (E.D.N.Y. Aug. 18, 2010) ("[I]f such barebones allegations sufficed to state a claim, then any time an ADEA-covered employer terminated an employee over age forty, the employer would be unable to replace that employee with someone younger[] without exposing itself to potential liability for age discrimination.") (citation and quotation marks omitted) (dismissing plaintiff's age discrimination claim on a Rule 12(b)(6) motion where plaintiff pled that his work performance was satisfactory, he was replaced by a younger person, and he was subjected to unjustified criticism because these allegations suggest only that plaintiff may have been treated unfairly, not discriminatorily). **[*15]** See also Payne v. Malemathew, 09 Civ. 1634 (CS), 2011 U.S. Dist. LEXIS 80649, 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) (holding that pro se plaintiff's allegations that he was the oldest person in his department and that he was replaced by two younger employees after his termination did not support an inference of discrimination sufficient to survive a motion to dismiss).

Without actual facts demonstrating discriminatory animus, discrimination is just one possibility for S & P's actions — as such, plaintiff's claim that he was terminated for discriminatory reasons may be conceivable, but it is certainly not plausible. The only two incidents which plaintiff describes with any specificity — i.e., his supervisor's statement that "she wants 'the old Doug who laughs back'" and the workplace meeting between his colleagues — resound in concern for plaintiff's behavior in the workplace rather than his protected characteristics. Indeed, plaintiff admits that his coworkers were worried about his "instability" and their own welfare. Cf. Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 116 (2d Cir. 2007) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their **[*16]** tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class.").

Because plaintiff does not demonstrate any "facially plausible" nexus between his termination and his protected characteristics, Counts I, II, and III are dismissed. **9**

**FOOTNOTES**

9 We note that plaintiff misconstrues the standard of review governing a 12(b)(6) motion. First, relying on Tellabs, Inc. v, Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007), plaintiff asserts that the "inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individualized allegation, scrutinized in isolation, meets that standard." Yet Tellabs articulated the standard of review for securities fraud cases brought pursuant to the Private Securities Litigation Reform Act, and is entirely inapplicable here. Indeed, scienter is not an element of an employment discrimination claim.

Second, plaintiff contends that defendants' motion must be denied because plaintiff's "disability discrimination claim . . . give[s] [d]efendant[s] notice of the claim and is more inclusive than a short plain statement of the claim." Pl.'s Opp'n at 6. Plaintiff alleges [*17] that notice pleading is "all that is required" for discrimination cases under the Supreme Court's decision in **Swierkiewicz**. Id. (citing **534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1**). Yet while Swierkiewicz's core teaching-that a plaintiff need not establish a prima facie case of discrimination to survive a motion to dismiss-remains intact, the pleading standard relied upon in that case has since been altered by Twombly and Iqbal. See Barbosa v. Continuum Health Partners Inc., 716 F.Supp.2d 210, 215 (S.D.N.Y. 2010) ("Reconciling Swierkiewicz, Twombly, and Iqbal, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim.") (quotations marks and citation omitted) (emphasis added). Indeed, the case upon which plaintiff relies, Morris v. David Lerner Associates, belies his point. 680 F.Supp.2d 430, 439 (E.D.N.Y. 2010) ("[T]o survive a Rule 12(b)(6) motion, plaintiff need not establish a prima case of discrimination, but her complaint must give fair notice of her claims, and those claims must be facially plausible.") (emphasis added). Accord Francis v. Giacomelli, 588 F.3d 186, 192 [*18] n.l (4th Cir. 2009) ("The standard that the plaintiffs quoted from Swierkiewicz [i.e., that a motion to dismiss should be denied only where it is clear that plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts] . . . was explicitly overruled in Twombly."); Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) ("We have to conclude . . . that . . . Swierkiewicz [has been specifically repudiated by both Twombly and Iqbal, at least insofar as it concerns pleading requirements . . . ."). The Second Circuit has yet to consider the issue. See Schwab v. Smalls, 435 Fed. Appx. 37, 2011 U.S. App. LEXIS 15639, 2011 WL 3156530, at *2 (2d Cir. July 27, 2011) (Summary Order).

## B. Hostile Work Environment

In Count IV of his Amended Complaint, plaintiff asserts that he was subjected to a hostile work environment. For such a claim to be viable, a plaintiff must plead facts suggesting that the alleged conduct: (1) is objectively severe or pervasive, such that it creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates an environment that is discriminatory, [*19] hostile or abusive to the plaintiff because of the plaintiff's membership in a protected class. See Patane, 508 F.3d at 113. [10] Yet the Amended Complaint does not set forth sufficient allegations to satisfy any of these prongs. "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004).

**FOOTNOTES**

**10** "Hostile work environment claims under claims under the NYSHRL are analyzed in the same manner as Title VII claims." Ellis v. City of New York, 2011 U.S. Dist. LEXIS 84104, 2011 WL 3279057, at *8 (S.D.N.Y. July 28, 2011) (citing Pucino v. Verizon Wireless Communications, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010)).

The Amended Complaint does not specify the statute upon which plaintiff's hostile work environment claim is based. In his opposition papers, plaintiff asserts that he "is alleging said claim under the New York Human Rights Law" (Pl.'s Opp'n at 11) but, again, fails to state whether he is asserting claims under NYSHRL or NYCHRL. In any event, plaintiff's hostile work environment claim must be dismissed because it fails to state a claim under even the more permissive **[*20]** NYCHRL standard — that is, plaintiff does not show that he experienced disparate treatment because of his age or disability. See Williams v. New York City Housing Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 1st Dep't 2009) ("For HRL liability, therefore, the primary issue for a trier of fact in harassment cases, as in other terms-and-conditions cases, is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of her [protected characteristics].").

As discussed above, plaintiff does not plead sufficient facts to give rise to the inference that any perceived mistreatment he endured was the result of discriminatory motives. As such, plaintiff cannot demonstrate that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). Indeed, plaintiff does not even try to satisfy the requisite criteria for his hostile work environment claim. For example, plaintiff alleges that he spoke to his supervisor "regarding her harassment over his severe depression" **[*21]** but fails to provide even one example of the alleged harassment leading up to the conversation. Accordingly, Count V of plaintiff's Amended Complaint is dismissed.

## C. IIED

In Count VI of the Amended Complaint, Plaintiff asserts an IIED claim based on the same allegations underlying his failed discrimination and hostile work environment claims. Because plaintiff does not plausibly demonstrate that he was subject to any discriminatory conduct or workplace harassment, he does not meet the more exacting standard for IIED claims - i.e., that the "conduct [is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Howell v. New York Post Co., 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) (noting the "strictness" of the IIED standard, and observing that "of the [IIED] claims considered by [the New York Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous"). See also, Snyder v. Phelps, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (Mar. 2, 2011) (Alito, J., dissenting) (noting that IIED "is **[*22]** a very narrow tort with requirements that 'are rigorous, and difficult to satisfy'") (quoting W. Keeton et al., Prosser and Keeton on Law of Torts § 12, 61 (5th ed. 1984)). Indeed, "[c]ourts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." Margrabe v. Sexter & Warmflash, P.C., 353 Fed.Appx. 547, 550 (2d Cir. Nov. 17, 2009) (quoting Cohn-Frankel v. United Synagogue of Conservative Judaism, 246 A.D.2d 332, 333, 667 N.Y.S.2d 360 (1st Dept. 1998)). Accordingly, Count VI of the Amended Complaint is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in its entirety. In light of plaintiff's prior opportunity to amend his complaint, his counsel's representation to the Court that he has no additional facts that could substantiate his claim, and the degree to which plaintiff falls short of asserting facially plausible claims against defendants, leave to replead is denied.

Dated: New York, New York

August 26, 2011

/s/ Naomi Reice Buchwald

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2011 U.S. Dist. LEXIS 99122**
View: Full
Date/Time: Sunday, February 19, 2012 - 11:26 PM EST

* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🟡Q - Questioned: Validity questioned by citing refs
🔺 - Caution: Possible negative treatment
🔷 - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

In    About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

*2010 U.S. Dist. LEXIS 142821, **

GLENN CHILDS, Plaintiff, vs. MOTOR CITY CASINO HOTEL, Defendant.

Case No. 09-13108

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

2010 U.S. Dist. LEXIS 142821

October 5, 2010, Decided
October 5, 2010, Filed

**SUBSEQUENT HISTORY:** Adopted by, Objection overruled by, Motion granted by, Dismissed by, in part, Dismissed without prejudice by, in part Childs v. Motor City Casino Hotel, 2011 U.S. Dist. LEXIS 45280 ( E.D. Mich., Apr. 27, 2011)

**CORE TERMS:** retaliation, attachment, summary judgment, age discrimination, undersigned, manager, recommendation, grievance, notice, supervisor, verbally, exhaust, errata, state law claims, protected activity, exhaustion, opposing, sex, federal claims, factual allegations, administrative remedies, complain, abused, gender discrimination, suspension, hostile work environment, citation omitted, discriminatory practices, discriminatory, termination

**COUNSEL:  [\*1]** Glenn Childs, Plaintiff, Pro se, Detroit, MI.

For Motor City Casino Hotel, Defendant: Anne Bagno Widlak, Nemeth Burwell, Detroit, MI.

**JUDGES:** Michael Hluchaniuk, United States Magistrate Judge. David M. Lawson, United States District Judge.

**OPINION BY:** Michael Hluchaniuk

 **OPINION**

**REPORT AND RECOMMENDATION DEFENDANT'S MOTION TO DISMISS (Dkt. 28)**

**I. PROCEDURAL HISTORY**

Plaintiff filed his complaint on August 6, 2009. (Dkt. 1). District Judge David M. Lawson referred this matter to the undersigned for all pretrial proceedings. (Dkt. 4). Defendant filed an answer to the complaint on December 15, 2009. (Dkt. 11). The Court held a scheduling conference, pursuant to notice, on December 22, 2009. (Dkt. 12). In the Case Management Order, the Court permitted plaintiff to file an amended complaint. (Dkt. 13). Plaintiff filed an amended complaint on December 31, 2009. (Dkt. 14). Subsequently, plaintiff contacted the Court seeking a telephone conference regarding his amended complaint, which was held, pursuant to notice, on February 4, 2010. (Dkt. 18). Plaintiff was then permitted to file a second amended complaint by February 16, 2010. Plaintiff filed his second amended complaint

on February 19, 2010 and an "errata" to his second **[*2]** amended complaint on February 22, 2010. (Dkt. 22, 23). Defendant filed an answer to the amended complaint and the errata on March 5, 2010. (Dkt. 24).

Defendant filed a motion for judgment on the pleadings on May 20, 2010. (Dkt. 28). Plaintiff filed a response on June 14, 2010. (Dkt. 30). Defendant filed a reply on June 24, 2010. (Dkt. 31). On July 13, 2010, defendant filed a joint statement of resolved and unresolved issues, indicating that the parties had been unable to resolve any issues pertaining to the motion to dismiss. (Dkt. 32). On July 22, 2010, the Court held a hearing, pursuant to notice. (Dkt. 29). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for judgment on the pleadings and for summary judgment be **GRANTED,** that plaintiff's federal claims be **DISMISSED** with prejudice, and that plaintiff's state law claims be **DISMISSED** without prejudice.

## II. FACTUAL BACKGROUND

With the permission of the Court, plaintiff filed his second amended complaint on February 19, 2010. (Dkt. 22). Plaintiff states that, in this action, he complains about "Title VII violation age discrimination...(and)... Title **[*3]** VII violation sex." *Id.* Plaintiff also attached a handwritten statement entitled "Attachment" containing 3 numbered paragraphs. (Dkt. 22). Paragraph one of the "Attachment" contains general allegations that one of plaintiff's supervisors, Jim Krygowski, verbally abused him, which created a "hostile working environment & abusive working conditions." He also alleges in that paragraph that "further tangible employment action followed...." Plaintiff alleges in paragraph two of the "Attachment" that he was constructively discharged on August 6, 2008. In support of this allegation, plaintiff recounts his transfer from an undercover, plain-clothes assignment as a Security Officer to an "undesirable uniform assignment where the treatment was miserable, humiliating, harassing & intolerable." *Id.* He claims that another supervisor, Chenine McDowell, threatened to slap him and "verbally abused" him on August 9, 2008. Plaintiff alleges that in retaliation for that act, he was assigned to undesirable posts where he "was very closely surveillanced (sic) with limited ability to move." *Id.* He further alleges that he met with Josephine Avery, the Vice President of Human Resources for Motor City, to **[*4]** complain about the reassignment from being a plain-clothes officer to being a uniformed officer, as well as to advise Ms. Avery of a conversation he had had with William Cummings, the Director of Security. Plaintiff alleges that he told Mr. Cummings that he believed he had been reassigned because of his union activity as a bargaining committee member. Plaintiff, who was born in 1959, also claims in paragraph two of the "Attachment" that one of his supervisors, Jim Krygowski, said to plaintiff "your (sic) late young man" when he arrived late for roll call. Plaintiff also complained to Ms. Avery that Mr. McDowell, one of his supervisors, stated that he would slap plaintiff, and, because he never apologized, plaintiff "took it as a threat." Plaintiff also alleges that he was "...verbally abused in a degrading way by the wardrobe manager Joyce in retaliation of me not allowing her employee Denise to leave with stockings on 8-9-08 11 P.M. without the proper signature." *Id.* Plaintiff also alleges that he was "forced to resign by threat of termination by Josephine Avery on Sept 5 2008." *Id.* Paragraph three of the "Attachment" to the second amended Complaint purports to add a claim of common **[*5]** law defamation but does not allege any allegedly defamatory statement by any person. *Id.*

On February 22, 2010, plaintiff filed a document entitled "Errata Correction 2nd Amended Complaint." (Dkt. 23). On the form complaint portion of the "Errata Correction 2nd Amended Complaint," plaintiff alleges: "1. Violation of Title VII (Age Discrimination in Employment Act. 2.Violation of Title VII Gender Discrimination Constructive Discharge. 3. Violation of Title VII Age Discrimination in Employment Act Retaliation See Errata Correction see attachments filed 2-19-2010." In the hand-written statement, plaintiff entitles "Errata Correction", he alleges in

pertinent part:

> "1.Violation of Title VII Age Discrimination in employment act. (while seeking my employment on 8-9-08 manager Jim Krygowski made a remark in reference of my age while complaining I was late for roll call. See attachment

> 2. Violation of Title VII gender discrimination constructive discharge. On 9-5-08 while (sic) seeking to report continued harassment of managers/supervisor H & R Director/Vice President Josephine Avery constructively discharged my employment see attachment

> 3.Violation of Title VII age discrimination on 9-16-08 while **[*6]** employed supervisor/manager John Gradzinski & Chennie McDowell suspended me for 5 days for no/call no show in retaliation (sic) for reporting harassment treatment to H & R Director/Vice President on 8-9-08 See attachment On attachment 10 claim #2 of violation of Title VII gender discrimination against H & R Director/ Vice President My demand for $750,000 I forgot to add due to intentional tort and constructive discharge this should be added to my claim for charge #2. See attachment filed on 2-19-2010.

## III. ANALYSIS AND CONCLUSIONS

A. Standards of Review

1. Rule 12(b)(6)

The standard for a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b). *See e.g., Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards."). To survive a motion for judgment on the pleadings under Rule 12(c) or to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a **[*7]** short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*,    U.S.    , 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, 577 F.3d 625, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows **[*8]** the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); *see also Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in

practice." *Courie*, 577 F.3d 625, *2.

In *Twombly*, the Court responded to the plaintiffs' contention that its analysis "r[uns] counter to" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). In *Swierkiewicz*, the question presented was "whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth ... in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Swierkiewicz*, 534 U.S. at 508. The Court answered that question in the negative, holding specifically that "an employment discrimination complaint need not include such facts and **[*9]** instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.*, quoting Fed.R.Civ.P. 8(a)(2). Based on that conclusion, the Court found that the appellate court had incorrectly dismissed the complaint at the pleading stage based on the plaintiff's failure to allege facts that he would have needed at the trial stage to support his claim, even though the complaint actually "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* at 514 (citation omitted). In *Twombly*, the Court noted that "*Swierkiewicz* did not change the law of pleading, but simply reemphasized ... that the ... use of a heightened pleading standard for **Title VII** cases was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly*, 550 U.S. at 570 (citation omitted). Further, in *Twombly*, the Court expressly denied adopting a standard that would "require heightened fact pleading of specifics," *id.*; rather, the standard established by *Twombly* requires that the plaintiff plead "only enough facts to state a claim **[*10]** to relief that is plausible on its face," *id.*, rather than a claim that is merely "conceivable." *Id.*

Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Augustine*, 2009 U.S. Dist. LEXIS 127424, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992); *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

2. Rule 56

Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) based, in part, on the failure to exhaust administrative remedies. Rule 12(d) provides that, if the moving party presents and the Court relies on matters *outside* the pleadings, "the motion **[*11]** [under Rule 12(b)(6)] must be treated as one for summary judgment and disposed of as provided in Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Thus, the plain language of the rule requires that if the motion relies on outside materials that the Court considers, then the motion "must" be converted into a motion for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). With respect to defendant's argument that plaintiff failed to exhaust his administrative remedies, the parties submitted, and the undersigned has considered, evidence that is outside the pleadings. Thus, the Court will treat the motion to dismiss as one for summary judgment under Rule 56.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether **[\*12]** summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible **[\*13]** in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to **[\*14]** create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B. Exhaustion of Administration Remedies

In its motion, defendant argues that plaintiff did not exhaust his administrative remedies as required under the ADEA, with respect to his claims of age discrimination and retaliation. Thus, according to defendant, those claims should be dismissed. Plaintiff claims that he suspected age discrimination but did not have any facts to support his claim at the time and also claims that defendant misled the investigator. Plaintiff also argues that the ADEA does not require a right to sue letter to be issued before a plaintiff can bring suit, so there is no exhaustion requirement.

Exhaustion is also required under the ADEA. See *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 753, 99 S. Ct. 2066, 60 L. Ed. 2d 609 (1979); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401 (6th Cir.2008) (administrative exhaustion is a statutory prerequisite to maintaining claims brought under the ADEA). To exhaust, some notice of the claim to the EEOC must be evident. In *Jones v. City of Franklin*, 309 Fed.Appx. 938, 943 (6th Cir. 2009), the Court **[\*15]** rejected the plaintiffs' claim that they had exhausted their claim of a racially hostile work environment, despite the claim that they "verbally" notified EEOC officials of this claim:

The plaintiffs argue that they provided sufficient notice to the EEOC to satisfy the administrative-exhaustion requirement. But each of the plaintiffs' written filings with the EEOC focused on discrete acts of discrimination, such as the reduction of evaluation scores and the failure of the City to award promotions to the plaintiffs. Only one racist comment was mentioned-the "rug head" remark-and that comment was directly tied to the failure to promote one of the plaintiffs' black colleagues. The plaintiffs claim to have verbally notified EEOC officials about other facts that support their hostile-work-environment claim, but the record contains no evidence beyond bald, nonspecific assertions that they did so.

In rejecting the plaintiffs' claimed exhaustion, the Court pointed out that "[n]o decision in [the Sixth Circuit] has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim. Several unpublished decisions of **[*16]** this court have in fact held to the contrary." *Id.* at 943, citing, *Brown v. City of Cleveland,* 294 Fed.Appx. 226, 234-35 (6th Cir. 2008); *Scott v. Eastman Chem. Co.,* 275 Fed.Appx. 466, 475 (6th Cir. 2008); *see also Clark v. Hoops, LP,* 709 F. Supp. 2d 657, 2010 WL 1417744, *4-5 (W.D. Tenn. 2010) ("The Court finds that Plaintiff's administrative filings would not have prompted the EEOC to investigate a racially hostile work environment at Hoops. Plaintiff has therefore not exhausted his administrative remedies as to his hostile work environment claim."). This same analysis applies to ADEA claims. *See e.g., Reddy v. JPMorgan Chase Bank, N.A.,* 2010 U.S. Dist. LEXIS 89162, 2010 WL 3447629, *7 (S.D. Ohio 2010) (The plaintiff's failure to allege a violation of ADEA in either the EEOC charge required a dismissal of the ADEA charge for failure to exhaust administrative remedies.).

In this case, plaintiff checked the boxes for sex discrimination and retaliation on his EEOC Charge of Discrimination. (Dkt. 28, Ex. 1). He did not check the box indicating he had an age discrimination and retaliation claim under the ADEA. Plaintiff's charge of discrimination reads as follows:

> I began my employment with the above named employer on **[*17]** August 23, 1999 as a Security Manager and currently I work in the capacity of a Security Officer. During the month of August 2008, I was removed from my assignment as a Plain Clothes Officer back to the position of a Uniform Officer. I asked for any and all reasons for this reassignment and was offered no reasoning for the change. Although, this was not a demotion, the position of Plain Clothes Officer was one which allows an employee to move to the next higher position. I complained about discriminatory practices and was threatened in a room surrounded by supervisors and managers. My complaint was never addressed. On September 3, 2008 I was given a two day suspension for attendance issues and following this suspension I was constructively discharged my employment. Other female officers are not treated in the same manner. I believe I have been discriminated against by being removed from my assignment, harassed, demoted, and disciplined in retaliation for complaining of discriminatory practices of my employer in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. 28, Ex. 1). The EEOC issued plaintiff a right to sue letter and dismissed the charge. (Dkt. 28, Ex. **[*18]** 2). The EEOC investigator also sent plaintiff a letter outlining the reasons why the agency concluded that neither gender nor retaliation was a factor in employment decisions Motor City made about plaintiff. (Dkt. 28, Ex. 7). The EEOC's letter contains no reference to any facts or allegations uncovered in its investigation suggesting that plaintiff was pursuing a claim under the ADEA, under either a discrimination or retaliation theory. *Id.* The undersigned is not persuaded by plaintiff's unsupported allegation that defendant "misled" the investigators, particularly in light of plaintiff's admission that he was aware of the facts supporting his ADEA claim before he filed his EEOC charge. Based on the foregoing, defendant should be granted summary judgment on plaintiff's ADEA claim, and any retaliation claim

related to his ADEA claim because plaintiff has failed to create a genuine issue of material fact that he failed to exhaust these claims.

C. Failure to State a Claim Under Rule 12(b)(6)

1. **Title VII** gender discrimination

Plaintiff's complaints are remarkably similar to the complaint dismissed in *Williams v. United Steelworks of America, AFL-CIO*, 2010 U.S. Dist. LEXIS 22295, 2010 WL 909883 (S.D. Ohio 2010), which **[*19]** contained the following facts relevant to the **Title VII** claim:

> Williams alleges that he was fifty-five years old when he was terminated and that he is "Black." Williams alleges that Local 7697 made an initial determination to arbitrate his grievance as meritorious, but then withdrew his grievance as non-meritorious more than two years later on April 13, 2009. Williams also alleges that Local 7697 did not respond to numerous requests for information about the status of his grievance nor to his request for a written notification of the withdrawal of the grievance. The only other allegation in the Amended Complaint concerning the grievance and arbitration is Williams' assertion that the processes "appear[ ] to be a vain act since [Steelcraft] and [Local 7697] only hear approximately two (2) Arbitrations per year and as of the date of his [unemployment compensation] hearing of December 19, 2006, there was [sic ] over 150 grievances pending." (Internal docket citations omitted).

The *Williams* court found that these factual allegations were not "enough to raise a right to relief" for race or age discrimination against the defendant "above the speculative level." 2010 U.S. Dist. LEXIS 22295, [WL] at *5, quoting, ***Twombly***, 550 U.S. at 555. **[*20]** The court found it particularly significant that the plaintiff pleaded "no facts from which the Court can infer that [the defendant's] conduct was motivated by race- or age-animus." *Id.* For example, the plaintiff did not allege that the defendant treated similarly-situated non-Black employees who had pending grievances more favorably than the plaintiff was treated and he did not allege that any of the union officials made discriminatory statements. *Id.* Rather, much like plaintiff's complaint in this case, the *Williams* plaintiff merely asserted in conclusory fashion that "younger workers are treated more favorably..." *Id.*

The undersigned agrees with the *Williams* court's analysis that such an allegation is an insufficient "formulaic recitation of the element[ ] of a cause of action." ***Twombly***, 550 U.S. at 555. Remarkably absent from plaintiff's rather detailed recitation of the facts underpinning his complaint, are any allegations connecting the event he complains about to any sex discrimination, the differential treatment of similarly situated women in the workplace by defendant, or any gender-based discriminatory comments made by defendant's employees. Like the plaintiff in *Williams*, **[*21]** the plaintiff here simply "did not plead any facts to support this conclusory allegation or explain in what manner [female] workers were treated more favorably." *Id.*, citing, *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 785-86 (6th Cir. 2007) (affirming a district court decision that "the Workers failed to state a claim because, 'although they allege that they were replaced, [they] do not allege facts necessary to support the factual allegation that they were replaced with younger workers.'"). Poor, or even unfair, treatment by an employer does not necessarily equate to discriminatory treatment that violates **Title VII.** Without sufficient factual allegations that tie the events described in plaintiff's complaint to discrimination based on sex, he has failed to state a claim on which relief can be granted under **Title VII.** Thus, the undersigned concludes that plaintiff's **Title VII** claim for sex discrimination should be dismissed.

2. Title VII retaliation

Title VII prohibits retaliation against an employee for engaging in protected activity, which consists of opposing a discriminatory practice, making a charge of discrimination or assisting in an investigation of wrongful activity. **[\*22]** *Thompson v. North American Stainless, LP*, 567 F.3d 804 (6th Cir. 2009). The undersigned concludes that plaintiff's complaints do not allege any facts to establish that he opposed conduct that violated Title VII, made a charge of discrimination, or assisted in an investigation. Rather, plaintiff alleges in the second amended complaint that he complained to the Vice President of Human Resources at Motor City about his belief that he had been assigned from plain clothes duty to uniformed duty because of his union activity. (Dkt. 28, Ex. 5). This is not protected activity under Title VII. He also claims that he was "verbally abused in a degrading way by the wardrobe manager Joyce in retaliation of me not allowing her employee Denise to leave with stockings that belong (sic) to the casino on 8-9-08 11 P.M. without the proper manager signature." *Id.* Nothing in these allegations suggests, however, that plaintiff engaged in protected activity under Title VII.

Moreover, the filing of the EEOC charge under the circumstances of this case, could not constitute protected activity because plaintiff filed the charge on December 22, 2008, *after* he resigned in September, 2008. Thus, it is impossible **[\*23]** for plaintiff to demonstrate a causal connection between his filing of the charge and any adverse employment action. Finally, while plaintiff complains about the two-day suspension he received in September, 2008, he does not allege any facts to link the suspension to any protected activity. Based on the foregoing, plaintiff's Title VII retaliation claim should likewise be dismissed.

4. State law claims

Plaintiff has also raised the state law claims of breach of contract and defamation. The undersigned suggests that this Court decline to exercise supplemental jurisdiction over such state law claims given the recommendation that all federal claims against defendant should be dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ( "[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

Given the foregoing conclusions, the other arguments raised by defendant need not be addressed.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **[\*24] RECOMMENDS** that defendant's motion for judgment on the pleadings and for summary judgment be **GRANTED**, that plaintiff's federal claims be **DISMISSED** with prejudice, and that plaintiff's state law claims be **DISMISSED** without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection

must recite  **[*25]** precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

/s/ Michael Hluchaniuk

Michael Hluchaniuk

United States Magistrate Judge

Date: October 5, 2010

Source:  **Legal > / . . . / > MI Federal District Courts**  i
Terms:  **Twombly w/p "Title VII"**   (Suggest Terms for My Search)
View:  Full
Date/Time:  Wednesday, February 22, 2012 - 11:46 PM EST

* Signal Legend:
🔴 -   Warning: Negative treatment is indicated
Q -   Questioned: Validity questioned by citing refs
⚠️ -   Caution: Possible negative treatment
🔷 -   Positive treatment is indicated
Ⓐ -   Citing Refs. With Analysis Available
ⓘ -   Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

In

About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.